FOXCROFT TOWNHOME OWNERS ASSOCIATION *et al.*, Plaintiffs-Appellants, *v.* HOFFMAN ROSNER CORPORATION, Defendant-Appellee.

Second District   No. 81-540

Opinion filed April 23, 1982.

Timothy J. Reuland, of Lindner, Speers & Reuland, of Aurora, for appellants.

William C. Murphy and J. Patrick Gallagher, both of Reid, Ochsenschlager, Murphy & Hupp, and Bruce A. Brown, of Goldsmith, Thelin, Schiller and Dickson, both of Aurora, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

This suit began as a class action suit on behalf of the owners of townhouse condominiums built by Hoffman Rosner Corporation (hereinafter Hoffman Rosner). It was brought by the Foxcroft Townhome Owners Association (hereinafter Association) and those individuals who were formerly or were at the time of suit directors of the Association, individually and in their representative capacity on behalf of all the condominium owners. The defendant, Hoffman Rosner, is the builder and developer of the property known as Foxcroft.

The condominiums were built in the early 1970's and the condominium declaration was filed in March of 1972. The Association was formed in April of 1972. Defects in the siding of the buildings were discovered in the spring of 1975. They are described in the complaint as "latent defects."

In 1979, the plaintiffs began suit against Hoffman Rosner for damage due to the defective siding on the buildings which, they claimed, diminished the value of the property. Count I of the original complaint was a class action on behalf of all tenants of Foxcroft based on breach of the implied warranty of habitability (*Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31.) Count II was brought as a class action based on negligence in using defective siding or in negligently installing the siding. Count III was a class action based on an alleged breach of a fiduciary relationship which proceeded from the fact that Hoffman Rosner was the developer and incorporator and also the author of the condominium declarations and had filed the declarations on behalf of the condominium owners.

The defendant filed a motion to dismiss the complaint as a class action because of procedural deficiencies, also a motion to dismiss for failure to state a cause of action under the implied warranty theory of count I, for lack of privity under count II and for failure to state facts amounting to a fiduciary relationship under count III. The trial court, after further pleadings and arguments on the defendant's motion to dismiss, dismissed counts II (negligence) and III (breach of fiduciary duty) for failure to state a cause of action. Subsequently, count I was dismissed as to those plaintiffs who were not the original purchasers from the defendant and who were, therefore, not in privity with the defendant.

The plaintiffs then filed an amended complaint. Count I of the amended complaint was brought as a class action on behalf of the original purchasers who are present owners, under a theory of breach of warranty of habitability; count II was brought on behalf of the original purchasers

under a theory of negligence; count III was a class action suit on behalf of those who did *not* purchase directly from Hoffman Rosner but were subsequent purchasers from the original buyers. This count was based on negligence.

The trial court denied the motion to dismiss the amended complaint as to counts I and II and granted the motion as to count III. Hoffman Rosner subsequently settled with the original owners (the plaintiffs under counts I and II of the amended complaint) and the present appeal is only on behalf of those who purchased the units from the original owners and were not in privity with Hoffman Rosner.

In this appeal, the plaintiffs attempt to sustain their appeal as to the dismissal of counts I (implied warranty) and III (breach of fiduciary duty) of the original complaint, as well as bringing an appeal on the dismissal of count III of the amended complaint (based on negligence). The defendant contends that the issues under counts I and III of the original complaint cannot be raised in this appeal because, by pleading over after the original complaint was dismissed, in an amended complaint, the plaintiffs abandoned counts I and III of the original complaint and cannot now appeal the dismissal of those counts. We are inclined to agree. In the case of *Coffey v. MacKay* (1972), 2 Ill. App. 3d 802, this court held that the plaintiff could not appeal the dismissal of the original complaint after pleading over in an amended complaint. See also *Moore v. Everett Snodgrass, Inc.* (1980), 87 Ill. App. 3d 388, and *Henkhaus v. Barton* (1977), 56 Ill. App. 3d 767.

The plaintiffs invoke the decision of this court in *Enlow v. Illinois Central R.R. Co.* (1968), 103 Ill. App. 2d 269, which holds that where the trial court dismissed the original complaint on the merits, with leave to plead over, indicating that it would not accept the theory of the original complaint as stated, the plaintiff, in pleading over, on the basis suggested by the trial court, did not waive the dismissed counts of the original complaint.

In any event, however, the question of waiver is not determinative in this case for we are of the opinion that the trial court was correct in dismissing counts I and III of the original complaint on the merits.

■■ As to count I (implied warranty of habitability), that theory rests squarely on *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, and in that case the supreme court construed the contract between the builder and his vendee to contain an implied warranty that the house being purchased from the builder would be "reasonably suitable for its intended use" as a dwelling. (76 Ill. 2d 31, 41.) It is clear from the language of *Petersen* that the case was decided on the basis of a *contract* between the builder and the buyer of the house. There is no indication in the opinion that it might extend beyond the relationship of builder and initial

purchaser from the builder. In using the analogy of the "merchantability" warranty under the Uniform Commercial Code, rather than stressing "habitability," the opinion retains the privity concept. The implied warranty of habitability arises out of a *contract* between the builder and the initial buyer and there is no hint in *Petersen* that it arises out of a general duty to build a reasonably fit house, by reason of which the builder would be liable to remote purchasers, that is, the general public, having no privity with him.

■■ Nor can the plaintiffs here, being subsequent purchasers, recover under a theory of warranty made to the original purchaser for the benefit of a third-party subsequent purchaser. In the recent case of *Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, Altevogt sued both Brinkoetter, the original owner of the house, and Hinton, the contractor who built it. The supreme court in reviewing the case held that the action against Brinkoetter was barred by the statute of limitations but considered at some length whether the count against Hinton, the contractor who actually built the house, could be maintained on a theory of implied warranty that Hinton would build the house in a reasonably workmanlike manner and whether this would inure to the benefit of Altevogt as a third-party beneficiary. After an extensive review of the cases involving implied promises for the benefit of a third-party beneficiary, the court came to the conclusion that since, in this case, there was nothing in the record to show that Hinton had any knowledge that Brinkoetter would sell the house to another person, there was not sufficient identification of a third-party beneficiary or a class of beneficiaries to make it a contract for the benefit of any and all subsequent purchasers. In discussing the necessary connection between the original promisee and the third-party beneficiary, the court quoted as follows from the leading case of *Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252:

" 'The rule is, that the right of a third party benefited by a contract to sue thereon rests upon the liability of the promisor, and this liability must affirmatively appear from the language of the instrument when properly interpreted and construed. The liability so appearing can not be extended or enlarged on the ground, alone, that the situation and circumstances of the parties justify or demand further or other liability. [Citation.]' 346 Ill. 252, 258." *Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 54-55.

In commenting on that language, the court said in *Altevogt*:

"While some other jurisdictions might view the matter differently, Illinois, as shown by the *Carson Pirie Scott* decision, holds that a third party is a direct rather than an incidental beneficiary only if the contracting parties have manifested in their contract an intention to confer a benefit upon the third party." 85 Ill. 2d 44, 54.

The court went on to hold that the allegations in Altevogt's complaint, which set out merely that Hinton in his building contract with Brinkoetter " 'impliedly warranted that said residence would be constructed in a reasonably workmanlike manner' " and knew that Hinton " 'knew that said residence was not to be inhabited by THOMAS B. BRINKOETTER, but was to be held out for sale to unidentified prospective buyers',", were not sufficient allegations to constitute a third-party contract for the benefit of Altevogt. *Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 52.

In the case before us, we have much the same situation. In contending that the subsequent purchasers from the original condominium owners were third-party beneficiaries of the implied warranty by Hoffman Rosner of a reasonable fitness for habitability, or at least, that the buildings were constructed in a reasonably workmanlike manner, the plaintiffs, who are not in privity with Hoffman Rosner, are asserting the same theory as did Altevogt against Hinton, relying on Hinton's implied warranty to Brinkoetter. The complaint does not specifically state that the nonprivity buyers are third-party beneficiaries, but we must assume this to be the theory under which recovery is sought on their behalf as they are admittedly not direct beneficiaries.

For the reasons set forth above, we do not accept this theory of recovery for the subsequent buyers and we think the trial court properly dismissed this count on the merits, irrespective of the question of waiver raised by the amended complaint.

■■ As to count III of the original complaint—based on a theory of fiduciary relationship—we see no basis for this count under the facts alleged. The complaint asserts a fiduciary relationship between all buyers, both those in privity and those not in privity with Hoffman Rosner, by virtue of the fact that Hoffman Rosner caused the real estate on which Foxcroft is situated to be subjected to certain "declarations, covenants, conditions and restrictions," including the covenants, conditions and restrictions of the Foxcroft Townhome Owners Association, recorded the articles of incorporation of the Association, and drafted and recorded the Association bylaws. This count recites that by reason of these acts of the developer the plaintiffs "reposed trust and confidence in the developer and, because of the developer's control over and relationship with the plaintiffs by virtue of the drafting and recording of said documents, the developer stands in a fiduciary relationship to the plaintiffs." The mere drafting and recording by Hoffman Rosner of the condominium declarations, Association bylaws, etc., is not sufficient to create a fiduciary relationship between Hoffman Rosner and the condominium owners as to the quality of workmanship and materials in the buildings. The original owners who worked with Hoffman Rosner on the declarations, cove-

nants, conditions and restrictions may have had a right to rely on the documents being properly drafted from a legal standpoint and promptly and properly recorded by Hoffman Rosner as required by law, but these acts and responsibilities were entirely separate from any responsibility for the quality and reliability of the building workmanship. The existence of a fiduciary relationship based on the facts alleged in this count is a mere conclusion, not supported by the facts alleged, and we think the trial court properly dismissed this count of the original complaint on the merits.

The third count of the amended complaint—sounding in negligence—remains for consideration in this appeal. This count is based on the theory that there is a general duty on the part of a builder or developer to build in a reasonably workmanlike manner and if he fails to do so he commits tort through his failure to perform such duty and is liable to *any* subsequent owner of the building who can prove he was damaged by such defects. Thus, the builder or developer would be liable to any buyer, however remote in time or sequence of ownership, for any defect or deficiency in the building which could be traced to the original construction. The developer or contractor would have the same general duty to all subsequent buyers as the driver of an automobile has to all other drivers on the highway to drive in a manner so as not to injure them. While this may at first blush seem to be a reasonable proposition, the ramifications of it as applied to a contractor or developer are very dubious, since it would prolong the builder's liability indefinitely. Bearing in mind the prolongation of liability implicit in the discovery rule for liability for negligent torts we can, without being fanciful, easily imagine the suits, countersuits, setoffs and indemnity actions which can arise over a period of time from the sale of a building to several successive buyers, each of whom claims to have been damaged by a defect he discovered sometime after he bought the building and for which he ultimately looks to the builder for redress.

The plaintiffs point out that the doctrine of privity for liability in tort has been dispensed with in Illinois not only in strict liability cases such as *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, but in cases not involving strict liability such as *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, and *Rozny v. Marnul* (1969), 43 Ill. 2d 54. *Pippin* was a personal injury case, and the circumstances were so different and unusual as to have little relevance here. However, *Rozny*, being a case involving economic loss due to negligent misrepresentation, has more relevance in its facts. The plaintiffs' brief quotes from *Rozny* as follows in attempting to diminish the concept of privity in negligent tort cases:

> "To eliminate any uncertainty still remaining after *Suvada v. White Motor Co.*, 32 Ill. 2d 612, 617, we emphasize that lack of direct contractual relationship between the parties is not a defense in a

tort action in this jurisdiction. Thus, tort liability will henceforth be measured by the scope of the duty owed rather than the artificial concepts of privity." 43 Ill. 2d 54, 62.

However, the scope of the duty owed in the *Rozny* case (negligent warranty as to the accuracy of a plat of survey) and other cases of negligent misrepresentation, such as *Glanzer v. Shepard* (1922), 233 N.Y. 236, 135 N.E. 275 (negligent misrepresentation as to a quantity of beans), and *Ultramares Corp. v. Touche* (1931), 255 N.Y. 170, 180, 174 N.E. 441, 444-45 (negligent certification of an inaccurate audit), was very narrow and specific. It was not a general duty, and the tort rested on misrepresentation of a particular fact, not on negligent performance of a general duty. The case before us is not a strict liability case, and the other cases cited involve both negligence and misrepresentation. The theory of the so-called negligence count we consider here rests on a general indefinite duty to "exercise due care in the development and construction of Foxcroft, so that the buildings and units thereof, particularly the units of the class represented in this Count, including, but not necessarily limited to the exterior surfaces and siding thereof, would be constructed in a good and workmanlike manner, would be reasonably suited for their intended use as that use is set forth and contemplated in said [condominium] documents, and would be habitable." As thus phrased, it is obvious that the scope of the "duty" is so broad as to be almost indefinable in limit. Nor is it distinguishable in its effect from the implied warranty of habitability recited in count I of the original complaint, which was dismissed.

The case is, in its facts, very much like that of *Mellander v. Kileen* (1980), 86 Ill. App. 3d 213. There the subsequent purchaser of a house sued the contractor who built it for the original buyer for breach of warranty because of a defective roof. The appellate court dismissed the suit for lack of privity. The only difference we discern between that case and the case before us is that the plaintiffs in the present case amended their complaint to add a count in which certain words are inserted such as "negligence," "negligent breach of duty," and "duty to exercise due care," to create an action sounding in negligence rather than in contract. This court in *Kramp v. Showcase Builders* (1981), 97 Ill. App. 3d 17, where the succeeding owner sued the plumber who installed the septic system of the dwelling, likewise dismissed the count based on implied warranty of habitability for lack of privity. To reject those cases and embrace the case at hand based on the distinction that in the present case the pleader invoked the words of art usual to negligence cases, without any other substantial difference in the essential facts, would, we think, be out of step with the law in this developing field. The addition of the concept of a "general duty" is too nebulous a ground to support a distinction between the cases mentioned above and the case at hand on the ground that the

case before us is a tort case requiring no privity. The alleged loss in this case is purely an economic one and in connection with purely economic losses the words of Justice Moran in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 86, seem apt:

> "Our conclusion that qualitative defects are best handled by contract, rather than tort, law applies whether the tort theory involved is strict liability or negligence. Tort theory is appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence of the nature described above. The remedy for economic loss, loss relating to a purchaser's disappointed expectations due to deterioration, internal breakdown or nonaccidental cause, on the other hand, lies in contract. As Dean Prosser has stated:
>
>> 'There can be no doubt that the seller's liability for negligence covers any kind of physical harm, including not only personal injuries, but also property damage to the defective chattel itself, as where an automobile is wrecked by reason of its own bad brakes * * *. But where there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of the value or use of the thing sold, or the cost of repairing it, the courts have adhered to the rule * * * that purely economic interests are not entitled to protection against mere negligence, and so have denied the recovery.' Prosser, Torts sec. 101, at 665 (4th ed. 1971)."

■■ In this case, the damage complained of was not sudden but was a gradual deterioration of the siding, which split open or came apart or fell off over a period of years. This is a purely economic loss, not a specific casualty, accident or misrepresentation reviewable under tort theory so as to dispense with the privity requirement.

For the reasons set forth, we affirm the judgment of the circuit court of Kane County.

Judgment affirmed.

SEIDENFELD, P. J., and REINHARD, J., concur.