517 A.2d 336

**COUNCIL OF CO–OWNERS ATLANTIS CONDOMINIUM, INC. et al.**

v.

**WHITING–TURNER CONTRACTING COMPANY et al.**

**No. 7, September Term, 1986.**

Court of Appeals of Maryland.

Nov. 14, 1986.

20

Kerry A. Greenwald (Kerry A. Greenwald, now West Palm Beach, Fla.) (Marvin P. Sadur and Sadur & Pelland, on the brief), Washington, D.C., for appellants.

John Henry Lewin, Jr. (Kathleen M. McDonald, Geoffrey R. Garinther and Venable, Baetjer & Howard, on the brief), Baltimore, for appellee The Whiting-Turner Contracting Company.

Aaron J. Beyer (Meltzer & Schiffrin, on the brief, Philadelphia, Pa., for appellee Ewing Cole Erdmann Rizzio Cherry Parsky a partnership, Alexander Ewing, Individually and as General Partner and Colonial Mortgage Service Company (James W. Almand and Ayres, Jenkins, Gordy & Almand, on the brief), Ocean City, and Douglas G. Worrall, Christopher J. Heffernan and Smith, Somerville & Case, on the brief), Baltimore, for appellee Meyers & D'Aleo, Inc.

The American Institute of Architects, The Maryland Society of the American Institute of Architects, and The Baltimore Chapter of the American Institute of Architects filed by Geoffrey S. Mitchell, Semmes, Bowen & Semmes, on the brief, Baltimore, for amicus curiae.

Argued Before MURPHY, C.J., and SMITH *, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

---

* SMITH, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

McAULIFFE, Judge.

The principal issue presented by this appeal is the extent to which tort liability should be imposed upon builders and architects for damages suffered by parties who enjoy no contractual privity with them. We hold that privity is not an absolute prerequisite to the existence of a tort duty in this type of case, and that the duty of builders and architects to use due care in the design, inspection, and construction of a building extends to those persons foreseeably subjected to the risk of personal injury because of a latent and unreasonably dangerous condition resulting from that negligence. Additionally, we hold that where the dangerous condition is discovered before it results in injury, an action in negligence will lie for the recovery of the reasonable cost of correcting the condition.

I

The Atlantis Condominium is a twenty-one story building containing 198 separate condominium units and located in Ocean City, Maryland. The council of unit owners as the governing regime of the condominium, and three unit owners who sue in their individual capacity and who seek to be certified as representative members of a class, brought an action in tort against the general contractor, developer, and architects involved in the construction of the building, contending that as a result of their negligence the utility shafts and related electrical work were not constructed and installed in accordance with the plans and specifications and did not comply with the requirements of the applicable building code. They allege that these latent conditions create a fire hazard that "presents a threat to the safety and welfare of the owners and occupants of the Atlantis Condominium and to the personal and real property of [the] owners and occupants."

The specific deficiency alleged is the failure to construct ten vertical utility shafts with materials having a fire resistance rating of two hours. Appellants do not allege negli-

gence in the design of the shafts, but rather a failure to construct the shafts in accordance with the design.[1] They allege negligent construction on the part of Whiting-Turner Contracting Company, the general contractor; negligent inspection, supervision, and acceptance of the work on the part of Meyers & D'Aleo, Inc., the design and supervising architects; and negligent inspection and misrepresentation on the part of Ewing Cole Erdman Rizzio Cherry Parsky, a partnership, and Alexander Ewing, individually, who they allege were the architects employed "to inspect the building and to certify to the Building Inspection Department of Ocean City, Maryland, that the building was constructed pursuant to the approved building permit in accordance with the plans and specifications submitted with the original permit application and that the building was ready for occupancy." Additionally, Appellants allege that Colonial Mortgage Service Company ("Colonial") was a developer of the project and that it knowingly or negligently permitted the shafts to be built at variance with the plans, as well as the requirements of the building code, and negligently obtained an occupancy permit. Appellants also allege that in advertising and selling the units, the developer negligently misrepresented "the building's suitability for occupancy." Appellants seek compensatory and punitive damages from each Appellee.

The builder and the certifying architects filed demurrers, contending that the declaration failed to allege facts sufficient to show a duty owing by them to Appellants. They contended that in the absence of privity no duty could arise. Recognizing, however, that the modern trend was toward the recognition of a duty to third parties under some circumstances, they advanced the alternative argument that a duty should not be recognized in this case because Appel-

---

1. We were informed at oral argument that the plans called for each shaft to be constructed of metal studs covered on the inside by shaft liner board and on the outside by a double layer of wallboard. Inspections have uncovered, however, some shafts with only one layer of wallboard and others completely lacking these liner boards.

lants had suffered only economic loss, and not personal injury or property damage. The developer also demurred asserting as its sole challenge to the sufficiency of the count against it that there was no allegation of personal injury or property damage, and that it "cannot be liable in tort to plaintiffs for purely economic loss." We restrict our consideration of the sufficiency of the pleadings to those grounds specifically set forth in the demurrer and therefore properly before the trial judge. *Shoreham v. Randolph Hills*, 269 Md. 291, 303, 305 A.2d 465 (1973); Maryland Rule 885.

The trial judge sustained the demurrers without leave to amend, concluding that Maryland law would not recognize a tort duty in the absence of privity under these circumstances, and that in any event a duty would not be recognized where only economic loss was claimed.

Following that ruling, the supervising architect, who had initially filed a demurrer but then withdrew it by filing a general issue plea, filed a motion for summary judgment alleging it owed no duty to Appellants for the reasons relied upon by the trial judge in sustaining the demurrers of the other Appellees. The motion was granted and judgment entered. A timely appeal was taken and we granted certiorari prior to consideration of the case by the Court of Special Appeals.

## II

We first consider whether a builder or architect may, under any circumstances, owe a tort duty of reasonable care to a person with whom he has no contractual privity.

In its early development, the law relating to builders and architects generally held that their duty did not extend to those with whom they had no contractual privity. Gradually, however, exceptions to the general rule of nonliability were judicially recognized. Actions in negligence were permitted, for example, where the contractor had practiced fraud or deceit or had deliberately concealed defects in the

work; where construction created a condition that was imminently or inherently dangerous; or where the contractor created a nuisance per se.[2] Additionally, the rule of nonliability was generally held to apply only where the injury to third persons occurred after acceptance of the work by the owner. Thus, where a duty of due care had been assumed by contract or conduct, recovery by a workman not in privity with the builder was permitted. *See, e.g., Krieger v. J.E. Greiner Co., Inc.*, 282 Md. 50, 382 A.2d 1069 (1978), recognizing that supervising and consulting engineers may owe a tort duty to workmen with whom they have no privity, depending upon the terms of their contracts or their voluntary assumption of duties. *See also Cutlip v. Lucky Stores*, 22 Md.App. 673, 695, 325 A.2d 432, *cert. denied*, 273 Md. 719 (1974) recognizing a duty on the part of an architect in favor of a employee of a subcontractor.

As the list of exceptions to the rule of nonliability grew, and as the attack upon the citadel of privity progressed in the area of products liability, courts increasingly turned to a reexamination of the underpinnings and continued viability of the general rule. The authors of a recent text offer the following analysis of the results of that reappraisal:

> In 1916 the leading case of *MacPherson v. Buick Motor Co.* [217 N.Y. 382, 111 N.E. 1050 (1916)] marked the beginning of the present phase of development. Here at last Judge Cardozo recognized probability of harm as the broad basis of duty in these cases (as it is in negligence law generally). The case itself involved personal injury to a subvendee of an automobile having a latent defect and the actual decision was carefully limited to the facts. But the requirement that defendant *know* [of] the defect ... [was] satisfied where he simply *should have known;*

---

**2.** Our predecessors recognized the so-called "nuisance" exception in *East Coast Freight Lines, Inc. v. Consolidated Gas Company*, 187 Md. 385, 393–97, 50 A.2d 246 (1946) but denied liability on the basis that the location of a light pole near a roadway could not constitute a nuisance because its placement had been approved by the appropriate governmental authority.

and "imminently dangerous" was ... rendered in effect "unreasonably dangerous." Limitations still persisted in many states.... The seminal principle continued to grow, however, and today the manufacturer's duty of care with respect to his products extends just about as far as the prudent eye can foresee unreasonable harm. The citadel of "privity" has indeed fallen.

Courts have perhaps been somewhat more reluctant to go so far in the case of other contractors (e.g., in building and construction work). Here the general rule is still often said to be one of nonliability for injuries caused after the owner has accepted the building or other subject of the contract. Some distinctions have been pointed out between the cases. The manufacturer makes standard goods and develops standard processes. Defects are harder to find in the contractor's special jobs. Again, the owner usually gives more thorough inspection to a building or structure than a vendee gives to a chattel. And a longer time may elapse between construction and injury in the contractor's case with the consequently greater opportunity for intervening factors to play a part. These considerations, however, go to the question of negligence and should be treated simply as problems of proof in individual cases. They should not be erected into a rule of thumb. And the modern tendency has been to measure the scope of duty here by the same broad principles of negligence as are generally applied in the field of accidental injuries. 3 F. Harper, F. James, and O. Gray, *The Law of Torts* § 18.5, at 708–10 (2d ed. 1986). (Footnotes omitted.)

*Prosser and Keeton on the Law of Torts* § 93, at 667–68 (5th ed. 1984), in analyzing the liability of a contracting party to third parties said:

The first obstacle which arises [to imposition of a duty] is the fact that there has been no direct transaction between the plaintiff and the defendant, which usually is expressed by saying that they are not in "privity" of contract. There is thus no logical basis upon which the one

may be required to perform the contract for the other, unless the contract has been made expressly for the benefit of the plaintiff, or it has been assigned to him.

In other words, the absence of "privity" between the parties makes it difficult to impose any duty to the plaintiff upon the contract itself. But by entering into a contract with A, the defendant may place himself in such a relation toward B that the law will impose upon him an obligation, sounding in tort and not in contract, to act in such a way that B will not be injured. The incidental fact of the existence of the contract with A does not negative the responsibility of the actor when he enters upon a course of affirmative conduct which may be expected to affect the interests of another person.

\* \* \* \* \* \*

The requirement of privity of contract has been abandoned as a basis for recovery by third parties for physical harm to themselves and tangible things against those who negligently supply, repair, or construct things so as to leave them in an unreasonably dangerous condition. (Footnotes omitted).[3]

The authors conclude that the rule of nonliability and its plethora of exceptions has now evolved into a general rule of liability where the result of negligence is the creation of a dangerous condition.

It is now the almost universal rule that the contractor is liable to all those who may foreseeably be injured by the structure, not only when he fails to disclose dangerous

---

**3.** The rule which prevailed in the nineteenth century was that a contracting party had no liability to persons not in "privity." This rule evolved from the 1842 case, *Winterbottom v. Wright,* 10 M. & W. 109, 152 Eng.Rep. 402 (1842), in which the Court of Exchequer held that the breach of a contract to keep a mailcoach in repair after it was sold could give no cause of action to a passenger in the coach who was injured when it collapsed. The decision held only that no action could be maintained on the contract itself, but certain dicta of the judges was taken to mean that a tort action was precluded as well. *See Prosser and Keeton on the Law of Torts,* § 104A, at 668 (5th ed. 1984); *Flaherty v. Weinberg,* 303 Md. 116, 122, 492 A.2d 618 (1985).

conditions known to him, *but also when the work is negligently done.* This applies not only to contractors doing original work, but also to those who make repairs, or install parts, as well as supervising architects and engineers. There may be liability for negligent design, as well as for negligent construction.

*Prosser and Keeton on the Law of Torts, supra,* § 104A, at 723 (emphasis added). (Footnotes omitted.)

This trend was also reflected by the incorporation of § 385 into the *Restatement (Second) of Torts* (1965).

One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor, under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others.

Among the courts that have recognized a duty on the part of builders or architects toward third persons after acceptance of work by the owner are: *Hanna v. Fletcher,* 231 F.2d 469 (D.C.Cir.), 58 A.L.R.2d 847, *cert. denied sub nom., Gichner Iron Works, Inc. v. Hanna,* 351 U.S. 989, 76 S.Ct. 1051, 100 L.Ed. 1501 (1956) (tenant's action against landlord's contractor for negligent repair of railing); *Wright v. Creative Corp.,* 30 Colo.App. 575, 498 P.2d 1179 (1972) (subsequent purchaser's action against contractor for failure to install safety glass in a sliding door); *Drexel Properties, Inc. v. Bay Colony Club Condominium, Inc.,* 406 So.2d 515 (Fla.Dist.Ct.App.1981), *review denied,* 417 So.2d 328 (Fla.1982) (condominium association's claim against architect and builder for negligence in supervising construction and in making subsequent repairs); *Stephens v. Stearns,* 106 Idaho 249, 678 P.2d 41 (1984) (tenant's action against architect and builder for failure to provide hand rail); *Kristek v. Catron,* 7 Kan.App.2d 495, 644 P.2d 480 (1982) (home buyer's action against builder for negligent

construction of roof); *Marine Insurance Company v. Strecker,* 234 La. 522, 100 So.2d 493 (1957) (tenant's action against landlord's contractor for faulty installation of cabinet); *Totten v. Gruzen,* 52 N.J. 202, 245 A.2d 1 (1968) (purchaser's action against seller's subcontractor); *Oates v. Jag, Inc.,* 314 N.C. 276, 333 S.E.2d 222 (1985) (subsequent purchaser's action against builder); *Leigh v. Wadsworth,* 361 P.2d 849 (Okla.1961) (action by tenant of subsequent purchaser against original builder); *Strandholm v. General Const. Co.,* 235 Or. 145, 382 P.2d 843 (1963) (action by longshoremen against installer of boom that collapsed); *Terlinde v. Neely,* 275 S.C. 395, 271 S.E.2d 768 (1980) (subsequent purchaser's claim against original builder); *Moxley v. Laramie Builders,* 600 P.2d 733 (Wyo.1979) (subsequent purchaser's claim against original builder for defective electrical wiring).

In rendering a decision upon the demurrers in this case, Judge Eschenburg acknowledged the trend toward the relaxation of the privity requirement in construction negligence cases but concluded he was bound by our statement in *Marlboro Shirt Co. v. Am. Dis. Tel. Co.,* 196 Md. 565, 571–72, 77 A.2d 776 (1951) that "a contractor owes no duty to the general public for which it may be made responsible in an action in tort for negligence, if it does not perform its contract." Similarly, Appellees rely heavily upon *Marlboro Shirt* as controlling precedent. Thus, several observations are in order concerning *Marlboro Shirt.* First, that case involved an action solely for damages resulting from injury to personal property, and the plaintiffs did not allege that the negligence of the contractor created any risk of personal injury.[4] The facts of the case before us require only that

---

4. Marlboro Shirt Company was a tenant in a building owned by S. Rosenbloom, Inc. During the term of the lease, Rosenbloom contracted with the telegraph company for the installation on the existing sprinkler system of an "Automatic Central Station Signaling System." This installation included the placing of sensors to detect changes in pressure or temperature, or the flow of water in the sprinkler system, and the installation of transmitters to signal a central station that a

we consider the existence of a duty where the negligent conduct has created a risk of personal injury, a question not addressed by the holding in *Marlboro Shirt*. Additionally, the general statement we have quoted above was broader than required for the determination of that case, and in repeating it we have said that "we do not mean to completely reaffirm the rather stringent holding there in regard to tort liability arising out of contractual obligations." *Matyas v. Suburban Trust Co.*, 257 Md. 339, 344, 263 A.2d 16 (1970). Finally, we point out that one year after the decision in *Marlboro Shirt* this Court assumed the existence of tort duty on the part of an elevator maintenance contractor in favor of a user of the elevator, notwithstanding the absence of privity. *Otis Elevator Co. v. Embert*, 198 Md. 585, 84 A.2d 876 (1951). In tracing the development of the law of duty and its relationship to the concept of privity, we said at 198 Md. 599, 84 A.2d 876:

> In [*MacPherson v. Buick Motor Company*] it was said, "The foundations of this branch of the law, at least in this state, were laid in *Thomas v. Winchester*, 6 N.Y. 397." [217 N.Y. 385, 111 N.E. 1051]. The opinion reviewed a number of later New York cases, some of which had already extended the doctrine of *Thomas v. Winchester*, and virtually recognized that it was itself a further extension of that doctrine. *Thomas v. Winchester* "was distinguished by this court in *State, use of Hartlove v. Fox*, 1894, 79 Md. 514, 29 A. 601, 24 L.R.A. 679, and was followed, in part at least, in *Flaccomio v. Eysink*, 1916, 129 Md. 367, 100 A. 510." *State, use of Joyce v. Hatfield*, 197 Md. 249, 254, 78 A.2d 754, 756. We have repeatedly applied—and perhaps extended—the original doctrine of *Thomas v. Winchester* with respect to manufacturers of food and beverages, inherently dangerous or likely to become dangerous through neglect of precau-

---

particular change had occurred. Marlboro did not allege that the telegraph company had in any way caused the leak—only that it had failed to detect or report it.

tions by the manufacturer. *MacPherson v. Buick Motor Company* has never been expressly approved or disapproved by this court, but has been quoted and distinguished. *State, use of Bond v. Consolidated Gas Electric Light and Power Co., supra* [146 Md. 390] 398–399 [126 A. 105, 42 A.L.R. 1237]. For present purposes we shall assume that *MacPherson v. Buick Motor Company* and the cases which anticipated or followed it are law in Maryland.

Additionally, in *Otis* we quoted the following significant language from *MacPherson v. Buick Motor Company, supra,* 111 N.E. at 1053:

[T]he presence of a known danger, attendant upon a known use, makes vigilance a duty. We have put aside the notion that the duty to safeguard life and limb, when the consequences of negligence may be foreseen, grows out of contract and nothing else. We have put the source of the obligation where it ought to be. We have put its source in the law.

In *Otis Elevator Co. v. Embert, supra,* denial of recovery to the injured elevator user was not grounded upon the absence of a duty running from the maintenance company to the injured plaintiff. Rather, we assumed that a duty of due care would extend to foreseeable users, but in the facts of the case found no duty on the part of the elevator company that could be related to the accident. By its contract with the owner of the building, the Otis Elevator Company had undertaken to maintain the elevator equipment, but it had not undertaken by contract or conduct any duties with respect to supervision of or advice regarding the operation of the elevator. Therefore, because the evidence clearly showed that the accident did not result from a breach of the duty to maintain the elevator, but instead arose out of the operation of the elevator, the elevator company was not liable to anyone.

The cases of *Krieger v. J.E. Greiner Co. Inc., supra,* and *Coffey v. Derby Steel Co.,* 291 Md. 241, 434 A.2d 564 (1981)

likewise turned on the existence *vel non* of *any* duty that could be related to the injury, rather than upon the determination of whether a particular duty extended to third parties. Nothing that we have said in *Otis Elevator Co., Krieger* or *Coffey* is inconsistent with the decision we reach today.

Appellees also rely on *Matyas v. Suburban Trust Co., supra,* but that case does not stand for the proposition that a tort duty of due care will not be extended in the absence of privity. Rather, *Matyas* reaffirms the familiar proposition that not every duty assumed by contract will sustain an action sounding in tort. *See Heckrotte v. Riddle,* 224 Md. 591, 595, 168 A.2d 879 (1961). In *Matyas* we held that neither the landlord nor the tenant had any obligation imposed by law to clear snow and ice from abutting public sidewalks, and that a provision in the lease requiring the tenant to do so would not create a legal obligation to third parties. While a contract may serve to define the nature of the obligation undertaken, and thus serve to identify the allocation or assumption of duties among various parties, it will not create a legal duty where one does not exist.

In following the modern trend, we hold that privity is not an absolute prerequisite to the existence of a tort duty. The duty of the architects and the builders in this case, to use due care in the design, inspection, and construction of this condominium extended to those persons foreseeably subjected to the risk of personal injury created, as here, by a latent and unreasonably dangerous condition resulting from their negligence. As indicated above, we are not required to, and do not reach the question of whether a risk of property damage alone will support the recognition of a tort duty.

We turn to the question of whether this type of action may be maintained against a builder or architect where the risk of personal injury exists, but personal injury has not in fact resulted. One view, reported in *Prosser and Keeton on The Law of Torts, supra,* § 92 n. 15 at 659, is that tort

liability will not be imposed unless personal injury or property damage has occurred:

It is generally said that a contractor's liability for economic loss is fixed by the terms of his contract. *Hall v. MacLeod,* 1950, 191 Va. 665, 62 S.E.2d 42; *Leavell & Co. v. Vilbig Bros., Inc.,* Tex.1960 [160 Tex. 600], 335 S.W.2d 211. Tort liability is in general limited to situations where the conduct of the builder causes an accident out of which physical harm occurs to some person or tangible thing other than the building itself that is under construction. See Annotation, 62 A.L.R.2d 1052. *Flintkote Co. v. Dravo Corp.,* 11th Cir.1982, 678 F.2d 942 (applying Georgia law); *McClain v. Harveston,* 1979, 152 Ga.App. 422, 263 S.E.2d 228; *Album Graphics, Inc. v. Beatrice Foods Co.,* 1980, 87 Ill.App.3d 238 [338], 42 Ill.Dec. 332, 408 N.E.2d 1041 ("Plaintiff has suffered only economic losses. Plaintiff should have his remedy for breach of contract but he should not be allowed to recover under tort law that which he may or may not be entitled to recover under the contract or contract law." Id. [87 Ill.App.3d at p. 1049, 408 N.E.2d] at p. 1050.); *Altevogt v. Brinkoeter,* 1981, 81 Ill.App.3d 711, 37 Ill. Dec. 209, 421, 401 N.E.2d 182 [1302]; *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.,* 1982, 105 Ill.App.3d 951, 61 Ill.Dec. 721, 435 N.E.2d 210; *Redarowicz v. Ohlendorf,* 1981, 95 Ill.App.3d 444, 50 Ill.Dec. 892, 420 N.E.2d 209.

In products cases, liability in negligence for economic loss alone, unaccompanied by physical injury, is often denied regardless of privity. 5 F. Harper, F. James and O. Gray, *The Law of Torts, supra,* § 28.9 n. 21 at 403–04. As Dean Prosser stated:

There can be no doubt that the seller's liability for negligence covers any kind of physical harm, including not only personal injuries, but also property damage to the defective chattel itself, as where an automobile is wrecked by reason of its own bad brakes, as well as damage to any other property in the vicinity. But where

there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of the value or use of the thing sold, or the cost of repairing it, the courts have adhered to the rule ... that purely economic interests are not entitled to protection against mere negligence, and so have denied the recovery. W. Prosser, *The Law of Torts* § 101 at 665 (4th ed. 1971).

On the other hand an increasing number of courts have declined to distinguish between a risk of personal injury or property damage on the one hand and a risk of economic loss on the other, finding no rational basis for that distinction. *See, e.g., Stewart v. Cox*, 55 Cal.2d 857, 13 Cal.Rptr. 521, 362 P.2d 345 (1961); *Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041 (Colo.1983); *Drexel Properties, Inc. v. Bay Colony Club Condominium, Inc.*, 406 So.2d 515 (Fla.Dist.Ct.App.1981), *review denied*, 417 So.2d 328 (Fla. 1982); *Barnes v. Mac Brown and Company*, 264 Ind. 227, 342 N.E.2d 619 (1976); *Kristek v. Catron*, 7 Kan.App.2d 495, 644 P.2d 480 (1982); *Juliano v. Gaston*, 187 N.J.Super. 491, 455 A.2d 523 (1982), *cert. denied*, 93 N.J. 318, 460 A.2d 709 (1983); *Quail Hollow East Condominium Association v. Donald I. Scholz, Co.*, 47 N.C.App. 518, 268 S.E.2d 12, *review denied*, 301 N.C. 527, 273 S.E.2d 254 (1980); *Terlinde v. Neely*, 275 S.C. 395, 271 S.E.2d 768 (1980); *A.E. Investment Corp. v. Link Builders, Inc.*, 62 Wis.2d 479, 214 N.W.2d 764 (1974).

In the context of this case, we find particularly persuasive the reasoning of the Indiana Supreme Court in *Barnes v. Mac Brown and Company, supra*, 342 N.E.2d at 621:

The contention that a distinction should be drawn between mere "economic loss" and personal injury is without merit. Why there should be a difference between an economic loss resulting from injury to property and an economic loss resulting from personal injury has not been revealed to us. When one is personally injured from a defect, he recovers mainly for his economic loss. Similarly, if a wife loses a husband because of injury from a

defect in construction, the measure of damages is totally economic loss. We fail to see any rational reason for such a distinction.

If there is a defect in a stairway and the purchaser repairs the defect and suffers an economic loss, should he fail to recover because he did not wait until he or some member of his family fell down the stairs and broke his neck? Does the law penalize those who are alert and prevent injury? Should it not put those who prevent personal injury on the same level as those who fail to anticipate it?

A similar conclusion was reached by the Fourth District Court of Appeal of Florida in *Drexel Properties, Inc. v. Bay Colony Club Condominium, Inc. supra*, 406 So.2d at 519:

We reject the contention by appellant that there can be no recovery in negligence absent proof of personal injury or property damage. We hold that there can be recovery for economic loss. Why should a buyer have to wait for a personal tragedy to occur in order to recover damages to remedy or repair defects? In the final analysis, the cost to the developer for a resulting tragedy could be far greater than the cost of remedying the condition.

We conclude that the determination of whether a duty will be imposed in this type of case should depend upon the risk generated by the negligent conduct, rather than upon the fortuitous circumstance of the nature of the resultant damage. Where the risk is of death or personal injury [5] the action will lie for recovery of the reasonable cost of correcting the dangerous condition.

---

**5.** It is the serious nature of the risk that persuades us to recognize the cause of action in the absence of actual injury. Accordingly, conditions that present a risk to general health, welfare, or comfort but fall short of presenting a clear danger of death or personal injury will not suffice. A claim that defective design or construction has produced a drafty condition that may lead to a cold or pneumonia would not be sufficient.

### III

Appellants' claim against the developer requires independent analysis—a process that is complicated somewhat by the state of the pleadings. Appellants alleged that Colonial was a developer of the condominium project and was negligent with respect to the construction of the shafts. They further alleged that Colonial negligently obtained the occupancy permit, and that through its advertising and sale of the units it negligently misrepresented to the unit owners that the building was suitable for occupancy. Colonial's demurrer raised only one issue—that it could not be liable in tort to Appellants for purely economic loss, so that the failure to allege personal injury or property damage constituted a fatal defect. We restrict our consideration of the demurrer to the single ground asserted, *Shoreham v. Randolph Hills, supra,* but find it necessary to discuss the sources of potential liability of the developer in order to fully answer the question presented.

A developer generally is thought of as one who improves and subdivides land, and builds and sells residential structures. Development and sale of land may be the sole business of the developer or it may be undertaken as a sideline by persons principally engaged in other businesses. The developer is the entrepreneur: he owns the land, determines how it is to be developed, and often selects others to perform some or all of the functions of testing, design, construction, supervision, financing, and marketing. Exclusive authority to control every phase of the project rests initially with the developer. In the case of major developers, that control may be retained in its entirety. *See, e.g., Shipper v. Levitt & Sons, Inc.,* 44 N.J. 70, 207 A.2d 314 (1965). In other cases, the developer may employ independent contractors, and may by contract determine the extent of actual control or supervision that he will retain.

The nature and extent of a tort duty recognized by law depends in part on the status of the party upon whom it is sought to be imposed, and upon his relationship to the party claiming the benefit of it. *See, e.g., Rowley v. City of*

*Baltimore,* 305 Md. 456, 463, 505 A.2d 494 (1986). Putting aside for the moment Appellants' claim of negligent misrepresentation, we examine the duty of the developer as it may flow from each of the three legal positions the developer occupies: 1) owner and occupier of the land, 2) creator of the improvement, and 3) vendor of the dwelling units.

 As the owner and occupier of land, a developer owes a nondelegable duty to those who may come upon the land, and the nature and extent of that duty is fixed by the status of the person claiming it. *Rowley v. City of Baltimore, supra,* 305 Md. at 464–65, 505 A.2d 494; *Sherman v. Suburban Trust Co.,* 282 Md. 238, 242, 384 A.2d 76 (1978). Where possession of the land is surrendered, that liability may be interrupted. *Henley v. Prince George's County,* 305 Md. 320, 327–38, 503 A.2d 1333 (1986). Where the surrender of possession is permanent by reason of sale of the property, the allocation of duties between vendor and vendee with respect to bodily harm resulting from dangerous conditions not apparent to a vendee, depends upon a number of factors. Where the dangerous condition arises after transfer of possession, the vendor is generally not liable. *Restatement (Second) of Torts* § 351 (1965). However, where the condition existed at the time of transfer, the vendor's duty to third parties and to the vendee will survive the sale and transfer if the vendor knew or had reason to know of the condition and of the risk involved, and failed to disclose that information to the vendee. *Restatement (Second) of Torts* §§ 352 and 353. This duty remains with the vendor only until the vendee has notice of the condition and a reasonable opportunity to take precautions against it.[6]

---

**6.** Precisely when the vendor will be relieved of this duty depends upon whether he has actively concealed the condition, or has simply failed to disclose it. If the former, liability continues until actual discovery of the condition by the vendee, and a reasonable opportunity to take effective precautions against it. If the latter, liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions. *Restatement, supra,* § 353.

■ This principle of law, providing for an extension of the landowner's liability beyond delivery of a deed and possession, applies only where bodily harm is suffered. As to this potential source of liability on the part of the developer, the Appellees were correct in their assertion that a cause of action had not been stated because personal injury had not been alleged.

We next consider the developer's liability as a vendor of residential property. At common law, there were no implied warranties in the sale of improved real property, and the rule of *caveat emptor* applied. As Judge J. Dudley Digges pointed out for this Court in *Loch Hill Constr. Co. v. Fricke*, 284 Md. 708, 712–13, 399 A.2d 883 (1979), we declined repeated invitations to create by judicial fiat implied warranties in the sale of new residencies. It was not until 1970 that the Legislature provided for specific implied warranties in such transactions. Chapter 151, § 1, Laws of Maryland, 1970, now codified (with changes) at § 10–203(a) of the Real Property Article, Maryland Code (1974, 1981 Repl.Vol.). Additional implied warranties pertaining to the sale by a developer of newly constructed or converted condominium units were created by the Legislature in 1981 and, as amended, are now codified at § 11–131 of the Real Property Article, Maryland Code (1974, 1981 Repl.Vol., 1986 Cum.Supp.).[7] The short answer to the question of the liability of the developer on a theory of breach of implied warranty is that Appellants have made no such claim.[8]

---

**7.** For a discussion of the statutory background and particular applicability in condominium sales of the implied warranty provisions of Titles 10 and 11 of the Real Property Article see *Antigua Condominium Association v. Melba Investors Atlantic, Inc.*, 307 Md. 700, 517 A.2d 75 (1986). *See also Starfish Condo. v. Yorkridge Serv.*, 295 Md. 693, 458 A.2d 805 (1983).

**8.** We were told at argument that all possible claims of breach of implied warranties were barred by the specific limitations provisions of the statutes granting those warranties. A Title 10 implied warranty is for one year from delivery of the deed (or possession, if earlier) in the case of a completed residence, and an action for breach must be commenced within two years after discovery or two years after the

The third potential source of a tort duty with respect to the dangerous condition of the building lies in the status of the developer as the creator of the building project. The developer is, in a sense, the builder of the project, even though he may delegate to others the physical acts of construction. Given the current trend of expanding the exceptions to the rule of nonliability of one who has employed an independent contractor, and given the policy considerations favoring the imposition of at least initial liability upon the person who sits at the top of the pyramid of those who create the improvement, a strong argument may be advanced in favor of the recognition of a nondelegable duty on the part of the developer with respect to unreasonably dangerous conditions created as a result of the development. We express no opinion on that issue because the pleadings suggest a narrower ground upon which a nondelegable duty of the developer may be found—the requirement of a statute or ordinance.

Recognition of the nondelegable nature of a duty imposed by certain types of statutes is discussed at 5 F. Harper, F. James and O. Gray, *The Law of Torts, supra,* § 26.11 at 83–84:

> There are ... situations wherein the law views a person's duty as so important and so peremptory that it will be treated as nondelegable. Defendants who are under such a duty "... cannot, by employing a contractor, get rid of their own duty to other people, whatever that duty may be." Duties imposed by statute are often found to be of

---

expiration of the warranty, whichever occurs first. A Title 11 warranty on common elements commences on the first transfer of title to a unit owner (or upon completion of the common elements if that is later) and extends for three years. Notice of the defect must be given within the warranty period, and an action for breach must be brought within a year of the warranty period. The declaration alleges that the Certificate of Occupancy was issued on April 14, 1975, and the defects were not discovered until October 21, 1980. Appellants may also have entertained some doubt about the applicability of Title 11 warranties to this case, a question we do not decide. *See generally Antigua Condominium Association v. Melba Investors Atlantic, Inc.,* 307 Md. 700, 727 n. 10, 517 A.2d 75 (1986).

this kind.... [S]tatutory duties that have been held nondelegable include ... various building code provisions.... (Footnotes omitted.)

The principle is recognized in § 424 of the *Restatement (Second) of Torts:*

One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions.

In *Gardenvillage Realty v. Russo,* 34 Md.App. 25, 366 A.2d 101 (1976), the Court of Special Appeals applied the principle to affirm a judgment entered in favor of tenants and their invitee against the developer-owner (and against the general contractor) for injuries resulting from the collapse of a defective concrete porch slab. The slab had been constructed and installed by a subcontractor, and the defect resulted from the improper placement of reinforcing bars within the slab, so that the defect defied detection. The Court of Special Appeals held that the Baltimore City Building Code imposed a duty on the owner of the premises at the time the structure was built to erect it in accordance with the Code, and that the duty could not be delegated by employing independent contractors to accomplish the work.

 We agree that where, as alleged here, there is a violation of a provision of a building code that was intended as a safety measure, and where that violation has produced death or personal injury, the duty imposed by the Code is nondelegable.[9] Additionally, for the same reasons discussed earlier in relation to the liability of builders and architects, we hold that it is not necessary in such cases to wait until bodily harm occurs, and an action will lie to

---

**9.** It remains a question of proof whether the applicable building code imposed a duty of compliance upon Colonial. We were informed at argument that Colonial was not the original developer but acquired its rights by assignment at some time during construction.

recover the cost of repairing a condition created by such a breach of duty where there is shown to exist an actual risk of death or bodily injury as we have described it.[10] Where the developer has been guilty of no independent negligence and is made to respond in damages solely by reason of vicarious liability resulting from the nondelegable nature of this duty, he will have a right to indemnity from an independent contractor employed by him whose negligence actually caused the breach.

Having found at least one theory of negligence that is embraced by the allegations of the declaration and not subject to the single attack set up by the developer's demurrer, we conclude that the demurrer to this count should have been overruled. For the guidance of counsel and the trial court we comment briefly upon the additional allegations of negligent misrepresentation.

The tort of negligent misrepresentation has been recognized in this State. *Flaherty v. Weinberg*, 303 Md. 116, 135, 492 A.2d 618 (1985); *Martens Chevrolet v. Seney*, 292 Md. 328, 439 A.2d 534 (1982). Because the allegations pertaining to this claim are for the most part stated in conclusory fashion, we have no way of knowing precisely what was said or written that Appellants believe constitute actionable misrepresentations. If the evidence discloses express representations made under circumstances that satisfy the elements of this cause of action as set forth in *Flaherty, supra,* 303 Md. at 135, 492 A.2d 618, the fact that Appellants have suffered only economic loss will not be a bar. However, if Appellants are contending that the warranties implied by law constitute representations that will support a cause of action if negligently made, the claim must fail. Although nonverbal conduct may under certain

---

**10.** We are not required to and do not reach the question of the liability, or extent of liability of one who may violate a safety provision of a building code in building, remodeling or repairing that person's own home with no intention at the time to sell or lease the premises.

circumstances constitute a representation, we are not persuaded that an involuntary warranty existing solely by operation of law may constitute a representation that will support a cause of action for negligent misrepresentation.

JUDGMENT OF THE CIRCUIT COURT FOR WORCESTER COUNTY REVERSED AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.