**MINI MART, INC., a Wyoming corporation, and C. Rodney Kinskey, Appellants,**

v.

**DIRECT SALES TIRE COMPANY, a Colorado corporation, Appellee.**

No. 88–5148.

United States Court of Appeals, Eighth Circuit.

Submitted July 3, 1989.

Decided Nov. 14, 1989.

in light of the Court's more detailed opinion, we affirm the summary judgment.

## I.

In 1976, Direct Sales approached Mini Mart about the possibility of Mini Mart's selling gasoline in conjunction with its convenience-store operations. Under the parties' initial agreement, Direct Sales would install underground gasoline storage tanks at four Mini Mart locations. Direct Sales would own the tanks and keep them supplied with fuel, while Mini Mart would sell the gasoline from its stores and keep two cents on every gallon of gasoline sold. The rest of the money from gasoline sales would go to Direct Sales.

Although Direct Sales had been in the business of selling gasoline for many years, the company had never itself installed or sold gasoline storage tanks. Direct Sales had always hired an independent contractor to install the tanks it used. In its deal with Mini Mart, Direct Sales used M & M Contracting, Inc. to install the tanks.[2]

Karen E. Schreier, Sioux Falls, S.D., for appellant.

Steven W. Sanford, Sioux Falls, S.D., for appellee.

Before ARNOLD, Circuit Judge, BRIGHT, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

ARNOLD, Circuit Judge.

This case returns to us after a remand to the District Court[1] for an expanded opinion setting forth the reasons for the Court's summary judgment in favor of Direct Sales. After considering the parties' briefs

Before the installation of the tanks was completed, Mini Mart and Direct Sales changed their agreement. Mini Mart decided to buy the tanks and operate them itself, to find another gasoline supplier, and to keep all profits from the sale of gasoline. Under their new written contract, Mini Mart agreed to "accept[] said personal property as is and as now located." R. 9 (Bill of Sale). In return, Direct Sales received the cost of the tanks, less depreciation; Direct Sales made no profit on its sale of the tanks.

In August of 1985, Mini Mart discovered that gasoline was leaking from a storage tank at one of its stores. Most of the gas was recovered from the surrounding soil, and the tank was removed in February of

---

**1.** The Hon. Andrew W. Bogue, Senior United States District Judge for the District of South Dakota.

**2.** M & M Contracting has never been a party to this suit.

1986. Tanks at the other locations apparently are not leaking.[3]

In June of 1986, Mini Mart filed suit against Direct Sales for negligence, breach of warranty, strict liability, violation of a regulatory statute, fraudulent concealment, and breach of contract. In essence, Mini Mart alleged that the underground storage tanks had been installed incorrectly. The tanks, Mini Mart claimed, were on beds of large, sharp rocks, instead of the beds of "noncorrosive inert materials such as clean sand or gravel, well-tamped in place" mandated by statute. S.D.Admin.R. 61:10:01:2.3.2. Both sides filed motions for summary judgment, and the District Court ruled in favor of Direct Sales. *Mini Mart v. Krause*, CIV 86–5081, slip op. at 2 (D.S.D. March 8, 1988).

Mini Mart appealed. Our Court heard the case and affirmed the dismissal of the claims for breach of warranty, strict liability, and fraudulent concealment. *Mini Mart v. Direct Sales Tire Co.*, 876 F.2d 63 (8th Cir.1989). Realizing that our review of the remaining claims would be greatly aided if we knew more of the rationale behind the District Court's decision, we remanded the case to that Court for a fuller opinion. *Id.*

With commendable promptness, the District Court set out the reasons underlying its decision. *Mini Mart v. Grimm's Pump Service*, CIV 86–5081, slip op. (D.S.D. June 26, 1989). First, the Court observed generally that the "[d]efendant showed [there was] an absence of evidence to support Plaintiffs' claims." While Direct Sales did admit that the leaking tank was improperly installed, resulting in expense to Mini Mart, the Court held that Direct Sales was not liable to Mini Mart on a negligence theory, because the tank was actually installed by an independent contractor. The Court rejected Mini Mart's violation-of-a-safety-statute claim on the ground that Mini Mart did not cite to the Court the statute on which it relied. Finally, the Court dismissed Mini Mart's breach-of-contract claim for failure to cite evidence in support of the cause of action, and failure to explain away the "as is and as now located" language in the parties' second contract.

We now consider Mini Mart's appeal in light of the District Court's expanded opinion.

## II.

Mini Mart argues that the District Court erred in granting Direct Sales' motion for summary judgment on its negligence cause of action. While conceding that generally an employer is not liable for physical harm to another resulting from acts or omissions of an independent contractor, Mini Mart argues that its claim fits into one of the many exceptions to the rule.[4] We agree with Mini Mart that the District Court erred in its analysis of the independent-contractor rule. However, we nonetheless affirm the summary judgment on this cause of action, on the basis of the "as is" language in the parties' second contract.

In general, the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor. *Haufle v. Svoboda*, 416 N.W.2d 879 (S.D.1987); Restatement (Second) of Torts § 409. However, exceptions to the rule "are so numerous as to prompt one expert to remark: '[T]he so-called exceptions, like a rodent consuming anaconda or python, have swallowed the so-called general rule of nonliability.'" *Haufle, supra*, at 880 (quoting S. Speiser, C. Krause & A. Gans, *The American Law of Torts* § 4.23 (1983)). Mini Mart claims it falls within the exception set out in § 424 of the Restatement (Second) of Torts:

---

**3.** But Mini Mart contends that there is a chance that leaks will develop at the other locations. R. 39, Appendix p. 78.

**4.** Actually, Mini Mart contends it fits into three of the exceptions to the rule. However, since application of even one exception upsets the District Court's ruling, we discuss only one exception.

One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions.

The regulatory statute involved is S.D. Codified Laws Ann. § 34–38–9,[5] which provides that "[t]he state fire marshal shall formulate and promulgate rules, regulations and standards covering ... the design, construction, location, installation and operation of equipment for the storage and handling of flammable liquids." The statute further provides that once adopted the rules will be deemed "a substantial part of this chapter [of the statute] as though set forth fully herein." *Id.* § 34–38–16; see also *Weeks v. Prostrollo Sons, Inc.*, 84 S.D. 243, 169 N.W.2d 725, 728 (1969). The Department of Public Safety eventually adopted a set of rules dealing with the burial depth and cover for underground steel tanks.[6] Mini Mart argues that these rules were ignored when its tanks were installed, and that Direct Sales should be held liable for violating the safety statutes since the company was under a nondelegable duty to comply with them.

The District Court ruled that the safety-statute exception did not apply in this case, reasoning that Direct Sales did not maintain supervisory control over the independent contractor, and that Mini Mart never showed that someone was physically harmed because of improper installation of the tanks. *Mini Mart v. Grimm's Pump Service, supra,* slip op. at 3–4 (June 6, 1989). But Section 424 of the Restatement, quoted above, does not require that the employer exercise any particular degree of control over the contractor for liability to attach. *Cf.* Restatement (Second) of Torts § 414. Thus, Mini Mart did not have to prove that Direct Sales supervised M & M Contracting to fall within the exception. While it is true that Mini Mart has not proved that anyone was harmed by the faulty installation of the tanks, Mini Mart did show harm to property (gas in the soil), and described risks to people that would flow from the damage to the property or from the improperly installed tank. The safety statute was enacted to prevent not only fire and explosion, but also the harms that Mini Mart alleges, namely contamination of the soil and ground water by a leaking tank. Mini Mart does at least raise questions of fact as to whether these harms occurred, and if so, to what extent.

Nor are we persuaded by Direct Sales' arguments on appeal as to the nonapplicability of § 424. Citing cases from other jurisdictions, Direct Sales claims that the exception applies only to injuries occurring during the course of work by the contractor. *E.g., Sewell v. Phillips Petroleum,* 606 F.2d 274 (10th Cir.1979), *cert. denied,* 444 U.S. 1080, 100 S.Ct. 1031, 62 L.Ed.2d 763 (1980); *Schlenk v. Northwestern Bell Telephone,* 329 N.W.2d 605 (N.D.1981). The interpretation of § 424 suggested by Direct Sales is certainly not apparent from the language of the Restatement provision, which is not limited to work-related injuries, and is contradicted by cases not cited by Direct Sales. *E.g., Bramer v. United States,* 412 F.Supp. 569, 572 (C.D.Cal.1976), *aff'd,* 595 F.2d 1141 (9th Cir.1979); *Council of Co-owners v. Whitney–Turner,* 308 Md. 18, 517 A.2d 336 (1986); compare *Metzger v. J.F. Brunken & Sons, Inc.,* 84 S.D. 168, 169 N.W.2d 261, 264–66 (1964); *Conover v. Northern States Power Co.,* 313 N.W.2d

---

**5.** The safety statutes cited by Mini Mart were in effect in 1976, when the tanks at issue were installed. Some of them have been modified, renumbered, or repealed since that time.

**6.** S.D. Admin.R. 61:10:01:2.3.2
Burial Depth and Cover
2.3.2 Steel underground tanks shall be set on firm foundations and surrounded with at least 6 inches of noncorrosive inert material such as clean sand or gravel well-tamped in place. The tank shall be placed in the hole with care, since dropping or rolling the tank into the hole can break a weld, puncture or damage the tank, or scrape off the protective coating of coated tanks.

397, 403, 407 (Minn.1981).[7] Direct Sales' contention that Mini Mart did not present evidence that the safety statute was violated is also unconvincing. Attached to Mini Mart's summary-judgment motion is a collection of deposition excerpts, all referring to the inadequate nature of the material comprising the bed of the leaking tank. Direct Sales' argument that the meaning of "gravel" was unclear or in flux is simply disingenuous. Finally, we reject Direct Sales' claim that Mini Mart was not within the protected class for which the statute was designed. Surely the South Dakota legislature intended to protect everyone who came into contact with the tanks, including people and companies who worked above them.

■ However, our ruling that Direct Sales would be liable for negligent installation by the contractor does not resolve the matter. As Direct Sales points out, before the installation of the tanks was completed, the agreement between the two companies was altered. Mini Mart bought the tanks "as is and as now located," and paid Direct Sales a reduced amount of consideration in exchange. We think this second contract substantially changed the relationship between the parties. By express agreement, Mini Mart assumed the risk for any installation defects and cannot now sue Direct Sales for those defects. Ordinarily there is "no public policy which prevents parties from contracting as they see fit, as to whether the plaintiff will undertake the responsibility of looking out for himself." W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser & Keeton on Torts 482 (5th ed. 1984). There is no reason to strike down the contract in this case, where the parties were both experienced and sophisticated businesses, and where Mini Mart received valuable consideration for its waiver of warranties.

Thus, we uphold the District Court's summary judgment on the negligence cause of action, on the ground that Mini Mart expressly assumed the risk of negligent installation in the second contract.

### III.

■ Mini Mart argues that the District Court erred in granting Direct Sales' motion for summary judgment on its claim of violation of a regulatory statute. Mini Mart points to the same regulatory enactments mentioned earlier, S.D. Codified Laws § 34–38–9 and S.D. Admin.R. 61:10:01:2.3.2, in support of its claim, and contends that under *Daugaard v. Baltic Co-op Bldg. Supply Ass'n*, 349 N.W.2d 419, 426 (S.D.1985), violation of a statute gives rise to a separate cause of action.

While we are not sure we would interpret the language in *Daugaard* as Mini Mart does, we need not reach that question. By purchasing the gasoline tanks from Direct Sales "as is and as now located," Mini Mart gave up its right to sue for violation of the statute. We uphold the District Court's summary judgment on this issue.

### IV.

■ Mini Mart appeals from the District Court's summary judgment on its breach-of-contract claim. The Court ruled against Mini Mart on the basis of the "as is" clause in the second contract. Mini Mart argues that there are two contracts in the case: the oral contract in which Direct Sales was to install and own the tanks, and the second, written contract under which Mini Mart was to own the tanks. Mini Mart claims that because it is bringing suit under the first contract, which dealt with installation, the "as is" clause in the second is irrelevant.

We reject this contention. We agree with the District Court that the second contract superseded the first. Under the second contract, Mini Mart purchased the tanks at cost less depreciation, and in return gave Direct Sales a waiver of warranties. It would defeat the second contract to allow Mini Mart to sue under the first. And, as we previously observed, both companies are experienced and sophisticated,

---

**7.** Indeed, it is not clear that the cases cited by Direct Sales support its argument.

capable of looking out for themselves. We will not view the two contracts in isolation.

Accordingly, the judgment of the District Court is

Affirmed.