730 A.2d 693

**Beulah WILBUR**

v.

**Alma SUTER, et al.**

**No. 1340, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

May 28, 1999.

**520**

Kenneth G. Macleay (Rollins, Smalkin, Richards and Mackie, on the brief), Baltimore, for appellant.

Jacqueline M. Bunty, Baltimore, for appellees.

Argued before THIEME, KENNEY and ALEXANDER WRIGHT, Jr. (Specially Assigned), JJ.

THIEME, Judge.

A fire occurred in the home of the appellees, Bruce Suter and Alma Gibson, then husband and wife, which spread to the adjoining row home owned by Beulah Wilbur, appellant. Appellant subsequently filed suit in the Circuit Court for Baltimore City against appellees, alleging negligence and intentional tort. The damages sustained by the appellant were stipulated to and the case proceeded on the issue of liability alone. The trial court granted judgment in favor of Alma Gibson. The jury rendered a verdict in favor of Bruce Suter.

## Questions Presented:

1. Did the circuit court err when it refused to give the violation of statute instruction in this case?

2. Did the circuit court err when it refused to allow cross-examination of the appellee on the issue of his intoxication?

3. Did the circuit court err when it granted a directed verdict in favor of Alma Gibson?

We answer "no" to each of these questions, and affirm the rulings of the trial court.

## Facts

An electrical fire started in the stairway of the basement at the Suter home. The fire quickly spread to the adjoining home of the appellant, Ms. Wilbur. At trial the experts were in general agreement that the cause of the fire was electrical in nature and originated in the area of the basement stairwell. Mr. Suter admitted to the Baltimore City fire investigator that a few months prior to the fire the switch on the basement

stairway light fixture would not turn on or off without turning the switch on and off several times.

Mr. Suter undertook extensive renovations to the home that he owned with his wife, Alma Gibson. The repairs included tearing down plasterboard and walls, hanging sheet-rock, installing a new furnace and new roof, as well as plumbing and carpentry work, among other things. At no time did appellees obtain building permits. No building inspector ever inspected the home.

Appellant sought to establish that the appellees were negligent through three theories: first, that the appellees knew that the light switch was faulty, and their failure to correct the problem caused the fire; second, that appellees failed to obtain building permits for renovations and repairs that they completed on the house; third, that appellees failed to maintain the walls in good repair as required by the Baltimore City Building Code (Code) and thus allowed defective wiring to go unnoticed and created the potential for fire.

Appellant called as an expert in the field of electrical engineering George E. McDuffie, who examined several electrical components that were recovered from the fire. These components included a piece of electrical cable with a switch box from the dining room light fixture and a portion of BX cable. The expert examined each electrical component for electrical damage, to determine if it was the source of ignition, and found none. Although McDuffie admitted that he had no evidence that the light switch in question caused the fire, nevertheless, he stated that when there is a malfunctioning light switch arcing may occur, which can result in an electrical fire. A light switch that must be "jiggled" to be turned on or off

> ... could indicate a number of different things. It could indicate that there is some defect inside of the switch mechanism itself. It could indicate that there was a loose wire on the switch.

It could indicate that the bulb was loose in the socket. It could indicate that there was a loose wire somewhere in the cable from the switch to the socket.

McDuffie explained that arcing is caused by a breakdown of the insulating material that keeps electricity from flowing from one point to another, and may ignite combustible material. McDuffie made no determination regarding the cause of the fire.

Robert Donald, a building inspector for Baltimore City, reviewed the records of the department and found that no permits for renovation, maintenance, or repairs had ever been issued for the appellees' home. These permits are required before any person may alter or repair any building. The Code requires that walls are to be maintained free of holes and deteriorated materials. Mr. Donald testified:

I know nothing about the fire. I'm merely stating that had a permit been taken out, it might have ... it might have saved from a fire, if there was a fire.

Donald gave no opinion on the cause of the fire.

David Malburg, an expert in the field of fire cause and origin, testified that the origin of the fire was "within the stairway area from the basement ceiling area at the stairway up to the top of the stairway to the first floor level." He described the interior of the stairway as heavily charred. He stated that there was a light switch just inside the opening at the left that controlled a porcelain light located part way down the stairway. Malburg testified that there was a potential of seven or eight ignition sources, seven of which were given to McDuffie for inspection and which were excluded by him as the ignition source. The malfunctioning light switch in the area of the origin of the fire that controlled the basement light was not recovered by the fire inspector.

Richard S. Clatchey, Jr., a certified electrician, testified that a problem might exist somewhere at multiple points in that circuit

because even though you are assuming it's a malfunctioning switch ... and if I heard that problem, that's the first thing

I would check. It still could also be in the light, it could be in the connections box.

In the light box, the switch box, you have electrical connections in there. Or it could be in the cable that runs between the ... the switch and the light....

His opinion was that, "if they had a malfunctioning switch or a light, they should had [sic] it looked at by a qualified electrician."

Appellee Suter testified that he was not a licensed contractor and knew nothing about electrical work. With respect to a pre-existing hole in the wall leading to the basement stairwell, Suter admitted to making no efforts to repair it. It had been present when the appellees purchased their home. In tearing down plasterboard and laths, Mr. Suter admitted that he did expose electrical wiring; however, Suter himself did nothing to affect the wiring. A few months prior to the fire, he noticed a problem with the light switch in the basement stairwell. To interrupt the power from the switch, he put the switch in the "off" position and removed the bulb. He did not hire anyone to repair it. One year prior to the fire, Mr. Suter was injured and, he testified, he was unable to do any repairs to the home.

During the time that the appellees lived in their home, they experienced no electrical difficulties. Alma Gibson indicated that she left the home several months prior to the fire but she testified that she visited daily. At no time was she aware of a problem with the light switch. During the time she resided in the home, she was aware of the renovations that her husband was routinely making to the home.

The appellant attempted to elicit evidence of Suter's intoxication on the night of the fire. This was precluded by the trial court.

The appellant requested the jury be instructed that the violation of a statute may be evidence of negligence and that certain provisions of the Building Code be read to the jury as part of its charge. The trial judge refused, stating "... I am not persuaded, assuming Mr. Suter did not get permits that

he was supposed to get, that that had anything to do with the cause of the fire.". Because the pertinent provisions of the Code were read into evidence without objections by the appellant's witness Donald, the trial judge allowed the appellant to argue his theory to the jury. Additionally, the trial judge directed a verdict as to the appellee Gibson, stating that there was no evidence that she was negligent since "she had not lived in the home for several months."

## Discussion

### –Jury instruction–

Although a trial judge must instruct the jury on the applicable law, even if not requested by a party to do so, *Clark v. State,* 80 Md.App. 405, 414, 564 A.2d 90 (1989), it is not the function of the court to advise the jury on abstract or moot propositions of law, however. A party is entitled to an instruction that correctly states the law only if that law is applicable to some issue in the case, i.e., if there is testimony in the case which supports it, *Kessler v. Equity Mgmt. Inc.,* 82 Md.App. 577, 593, 572 A.2d 1144 (1990) (citing *Sergeant Co. v. Pickett,* 285 Md. 186, 194, 401 A.2d 651 (1979)); *see also Odenton Dev. Co. v. Lamy,* 320 Md. 33, 43, 575 A.2d 1235 (1990).

With respect to violation of a statute, the Court of Appeals held:

"The violation of a statute may furnish evidence of negligence." It may be actionable when it causes harm to a person within the class of persons the statute seeks to protect and the harm is the kind that the statute is designed to prevent. Although the violation of a statute is evidence of negligence, it "is not per se enough to make a violator thereof liable for damages." For that to occur, the plaintiff must show that the violation was a proximate cause of his or her injury, . . . that "had not been interrupted by a break in the chain of causation."

*Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.,* 335 Md. 135, 155–56, 642 A.2d 219 (1994) (citations omitted); *see also*

*Hammond v. Robins,* 60 Md.App. 430, 483 A.2d 379 (1984)(holding that evidence that defendant dog owner violated a county animal control ordinance designed to protect the public against personal injuries caused by "roaming animals," by keeping her dog untethered in her open yard, was admissible as evidence of negligence in a suit for personal injuries sustained by the plaintiffs when the defendant's dog darted in front of their tandem bicycle).

■ Where the evidence of violation of a statute does not rise above speculation as to proximate cause, the issue should not be submitted to the jury. *See Mallard v. Earl,* 106 Md.App. 449, 464, 665 A.2d 287 (1995).

■ The appellant argues that the trial court improperly declined to read certain Code provisions and to instruct the jury that the violation of a statute may be evidence of negligence. The only witnesses who attempted to pinpoint the ignition site of the fire were the electrician, Clatchey, who testified that the ignition point "had to be in the light switch or its related components," but admitted that an inspection of a switch one day is no guarantee against a problem arising even days later, and Donald, the building inspector, who indicated that compliance with the codes "might have" prevented a fire. The appellant contends that this testimony satisfied her burden of presenting legally sufficient evidence not only of a Code violation but of proximate causation.

The testimony of these witnesses is predicated on the appellant's theory of arcing. What is missing from the appellant's case is evidence that this light switch exhibited any arcing which triggered the fire. The testimony elicited from Clatchey and others gives rise only to speculation that, even if a permit had been taken by appellees for the renovation work and even if an inspection had occurred, there was a nexus between the work Suter did and the fire, or that an inspection would have revealed a defect in the light switch that caused this fire. Suppositions and innuendoes are insufficient to prove a cause of action.

Although Michael P. Maher, a contractor specializing in rehabilitation and renovation of homes, could not offer any evidence that Bruce Suter's renovation work caused any electrical problems or that the light switch in the basement was the cause of the fire, he was permitted to testify that Bruce Suter was negligent in failing to obtain the required applicable permits. We note that legal interpretation of laws, including the Code, are primarily for the judge. *See Laser v. Wilson,* 58 Md.App. 434, 440, 473 A.2d 523 (1984).

Despite the finding that the appellant failed to satisfy her burden, the court allowed the appellant the opportunity to refer to the Code sections in closing argument, because they had been read into evidence by witness Donald. In effect, this action coupled with the court's instruction on negligence actually presented appellant's theory of negligence to the jury.

Whether appellant was entitled to a jury instruction on violation of a statute, the evidence presented and argued by the appellant was functionally equivalent to such. We find no error on this issue.

### –Drunkenness–

Appellant complains that the trial court improperly restricted her ability to elicit testimony from appellee regarding his alcoholism and alcohol consumption in the hours preceding the fire. Again, what is lacking is evidence that Suter's alcohol consumption impaired his sensibilities, which directly caused the fire, or that he did something to the light switch to ignite the fire.

Intoxication may be evidence of negligence, but we are unaware of any Maryland decision that has gone so far as to say that intoxication in itself constitutes negligence.

Intoxication, by itself, is not sufficient, as a matter of law, to constitute the act necessary to show such causation. While evidence of intoxication does not, as a matter of law, constitute negligence per se, such evidence may be admissible to help prove negligence. Evidence of intoxication frequently is part of a causal chain which, if believed by the trier of

fact, might well result in contributory negligence. This is not to say that evidence that a plaintiff or defendant in a negligence case is intoxicated is automatically admissible regardless of the circumstances of the case. As counsel for [the appellant] pointed out repeatedly at trial and as he contends on appeal, what is at issue is not intoxication itself, but intoxication as leading to some action or failure to act which is negligent. What is required, therefore, in order for evidence of intoxication to be admissible is for the proponent of the evidence to demonstrate some causal connection between the allegedly intoxicated state of the person in question and his or her conduct or behavior.

*Mitchell v. Montgomery County*, 88 Md.App. 542, 555, 596 A.2d 93 (1991) (citations and footnotes omitted).

The report of Captain Dennis Storck of the Fire Investigation Bureau of the Baltimore City Fire Department made mention of the fact that Suter consumed several beers over the course of the afternoon and evening preceding the fire. None of the numerous experts called by appellant offered a causal connection between Suter's alcoholic intake on the night of the fire and the fire itself.

The trial court properly exercised its discretion in precluding this evidence.

### –Judgment Entered for Alma Gibson–

Appellant's last attack on the rulings below pertains to the trial judge's entry of judgment in favor of Alma Gibson. In reviewing a trial court's grant of a motion for judgment in a jury trial, this Court must conduct the same analysis as the trial court, viewing all evidence in the light most favorable to the non-moving party. See Maryland Rule 2–519(b); *see also Nationwide Mut. Fire Ins. Co. v. Tufts*, 118 Md.App. 180, 189, 702 A.2d 422 (1997), *cert. denied*, 349 Md. 104, 707 A.2d 89 (1998). Thus, we may affirm the grant of the motion for judgment only if, when considering evidence most favorable to appellant's claim, we conclude that there was insufficient evidence to create a jury question. *Tufts*, 118 Md.App. at 189, 702 A.2d 422.

■ The appellant conceded that Gibson denied knowledge of the faulty switch problem but argues that liability of Gibson arises from a nondelegable duty imposed by statute, including those duties contained in building codes. The appellant cites *Gardenvillage Realty Corp. v. Russo,* 34 Md.App. 25, 366 A.2d 101 (1976), and *Council of Co-Owners Atlantis Condominium, Inc. v. Whiting–Turner Contracting Co.,* 308 Md. 18, 517 A.2d 336 (1986), for this proposition.

In *Whiting–Turner,* the council of unit owners of a condominium regime sued the general contractor, developer, and architects for the negligent construction of the building. The court determined that privity is no longer required between an injured third party and a contractor whose work is negligently done. The Court then stated:

> As the owner and occupier of land, a developer owes a nondelegable duty to those *who may come upon the land,* and the nature and extent of that duty is fixed by the status of the person claiming it.

*Id* at 37, 517 A.2d 336 (emphasis supplied) (citations omitted).

Similarly, in *Gardenvillage,* the tenants and a guest were injured when the porch upon which they were standing collapsed. Suit was filed against the owners and managers of the property and the manufacturer of the porch, which was constructed in violation of the Baltimore City Code. We upheld the jury's verdict in favor of the plaintiffs. *Gardenvillage,* 34 Md.App. at 35–39, 366 A.2d 101.

■ It is difficult to find the applicability of *Gardenvillage* and *Whiting–Turner,* both of which involve injury to persons while upon the premises of the owner, to the instant case. The appellant's claim for damages did not arise from her presence on the appellee's property. Additionally, we note that liability may not be imposed for the negligence of a person who is merely passive while the negligence of another is the moving and effective cause of the injury. *See Schwarz v. Hathaway,* 82 Md.App. 87, 94, 570 A.2d 348 (1990) (quoting *Peterson v. Underwood,* 258 Md. 9, 16, 264 A.2d 851 (1970)).

Arguably, the appellant might have been able to obtain a judgment against both appellees, who would then be jointly and severally liable for the whole. Since the jury found no negligence on the part of Suter, who performed the renovations, there is no basis for Gibson's liability.

We hold that the trial judge did not err in finding that appellant failed to present evidence that would generate an issue of fact for the jury concerning the liability of Gibson.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**