REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 655

September Term, 2016

_____

MARRICK HOMES LLC, ET AL

v.

ADAM RUTKOWSKI, ET AL.

_____

Graeff,
Berger,
Salmon, James P.
      (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Berger, J.
_____

Filed: May 31, 2017

This case is before us on appeal from a jury verdict of the Circuit Court for Calvert County in a personal injury action brought by Adam Rutkowski and Sara Mastropole, appellees, husband and wife. Adam Rutkowski was injured on November 11, 2012, when a safety guardrail in his home failed, causing him to fall twelve to thirteen feet to the concrete below. The appellees filed suit against Marrick Properties, Inc. ("Marrick"), the builder and general contractor that constructed their home, as well as against Creative Trim, Inc. ("Creative Trim"), the subcontractor that was responsible for the construction and installation of the failed safety guardrail. The appellees also brought suit against the individual owners of Creative Trim and the previous owners of the home. All parties other than Marrick were dismissed prior to trial. The jury returned a verdict for the appellees, and Marrick appealed.

On appeal, Marrick presents four issues for our review, which we have consolidated as three issues and rephrased[1] as follows:

_____

[1] The issues, as presented by Marrick, are:

1. Under Maryland law, does the general contractor/builder of a house owe a nondelegable duty to unknown future owners, when it subcontracts the relevant work, is not the owner of the property, and the evidence shows it had a supervisor on site?

2. Under Maryland law, does any duty of a seller survive the sale of the property when the first purchaser of the home had nearly seven years to inspect the home and discover any defect and the second owner had an additional two months thereafter?

1.   Whether, under Maryland law, a general contractor/builder bears a nondelegable duty to comply with the relevant provisions of the building code.

2.   Whether sufficient evidence supports the jury's finding that Marrick was negligent in the construction and/or the supervision of the construction of the safety guardrail.

3.   Whether, as a matter of law, Rutkowksi assumed the risk and/or was contributorily negligent by leaning on the safety guardrail.

For the foregoing reasons, we shall affirm the judgment of the Circuit Court for Calvert County.

## FACTS AND PROCEEDINGS

In 2005, Marrick completed construction of a home in Dunkirk, Maryland. Marrick served as the general contractor/builder for the home originally owned by Mark and Sandra Smith. Marrick entered into a contract with Creative Trim to perform certain trim work on the home, including the construction and installation of guardrails. The home was constructed with a sliding glass door in the kitchen to allow access to a potential future deck. Although the kitchen was located on the first story of the home, the sliding door

---

3.   Under Maryland law, does causation exist when an injury occurs seven years after the construction of a railing by a subcontractor, which gave way, with no discernable changes during that time?

4.   Under Maryland law, is the home owner contributorily negligent and did he assume the risk, as a matter of law, when he fails to inspect the safety railing on his home, leans his body against the railing, reaches beyond the railing, all while aware he will fall if the rail does not hold?

2

opening was approximately twelve to thirteen feet above the ground due to the slope of the lot. The home did not have a deck at the time it was constructed, so a safety guardrail was installed on the exterior of the house outside of the sliding glass door. Creative Trim was a subcontractor that built and installed guardrails on Marrick properties, and Marrick identified Creative Trim as the subcontractor that constructed the railing at the appellees' home. After the house was completed, the Smith family moved into the home in 2005 and lived in it for approximately seven years.

In 2012, the appellees purchased the home from the Smiths and moved into the home with their one-year-old son. Thereafter, approximately two months later, on November 11, 2012, Rutkowski opened the sliding glass door in order to shake out a kitchen mat. He extended his arms over the guardrail while holding the mat and his body pushed against the guardrail. The guardrail gave way, causing Rutkowski to fall onto the concrete patio below. Rutkowski suffered multiple broken bones and a traumatic brain injury as a result of the fall.

The appellees filed a complaint in the Circuit Court for Calvert County against Marrick, Creative Trim, Richard and Donna Haupt (the owners of Creative Trim), and Mark and Sandra Smith. The appellees alleged, *inter alia*, negligence, negligent supervision, and loss of consortium against Marrick. Marrick raised the affirmative

defenses of contributory negligence and assumption of risk. Prior to trial, all parties other than Marrick were dismissed.[2]

The case was tried before a jury over a period of five days in February 2016. The parties presented evidence relating to, *inter alia*, the role of Marrick and Creative Trim in the design and construction of the safety guardrail, the standard of care required for general contractors, the way in which the safety guardrail was constructed, the requirements for construction of the guardrail pursuant to the Calvert County building code, the cause of the failure of the safety guardrail, and the extent of Rutkowski's injuries. The appellees presented evidence that the safety guardrail was affixed to the home with non-structural finishing nails, rendering it incapable of withstanding the 200 pounds of lateral force required by the relevant building code. The finishing nails were concealed by the use of wood trim.

At the close of the plaintiff's case, the circuit court denied Marrick's motion for judgment as to the claims alleging negligence, negligent supervision, and loss of consortium. The circuit court further denied Marrick's motion for judgment as to its defenses of contributory negligence and assumption of risk. Marrick renewed its motion for judgment at the close of all evidence, and the court again denied the motion.

---

[2] Marrick filed cross-claims against the Smiths and Creative Trim. Prior to trial, all parties voluntarily dismissed their claims against the Smiths, and the appellees dismissed their claims against the Haupts. On the morning of trial, the circuit court granted Creative Trim's motion to dismiss on the grounds that Creative Trim lacked the capacity to be sued, having forfeited its corporate charter in 2005.

The jury returned a verdict in favor of the appellees and against Marrick, awarding $1,306,700.00 in damages. Marrick filed a motion for judgment notwithstanding the verdict, for new trial, and remittitur. The circuit court denied Marrick's motion except that the court applied the statutory cap on noneconomic damages to the jury's verdict. The damage award was further amended on May 20, 2016 due to a clerical error, resulting in a final judgment of $976,700.00. Marrick noted a timely appeal. Additional facts shall be discussed as necessitated by our discussion of the issues on appeal.

## STANDARD OF REVIEW

We review a circuit court's order granting a motion for judgment notwithstanding the verdict applying a *de novo* standard of review. *Lowery v. Smithsburg Emergency Med. Serv.,* 173 Md. App. 662, 682-83 (2007). We have explained:

> Whether the trial court applied the correct standard of proof in adjudging its grant of appellees' motion for judgment is a question of law that we review *de novo*. *Coleman v. Anne Arundel County Police Dept.*, 369 Md. 108, 121, 797 A.2d 770 (2002). "We review the grant of a motion for judgment under the same standard as we review grants of motions for judgment notwithstanding the verdict." *Tate v. Bd. of Educ. of Prince George's County*, 155 Md. App. 536, 544, 843 A.2d 890 (2004) (citing *Johnson & Higgins of Pa., Inc. v. Hale Shipping Corp.*, 121 Md. App. 426, 450, 710 A.2d 318 (1998)). The Court assumes the truth of all credible evidence on the issue and any inferences therefrom in the light most favorable to appellants, the nonmoving parties. *Id.* (citation omitted). "Consequently, if there is any evidence, no matter how slight, that is legally sufficient to generate a jury question, the case must be submitted to the jury for its consideration." *Id.* at 545, 843 A.2d 890 (citing *Washington Metro. Area Transit Auth. v. Reading*, 109 Md. App. 89, 99, 674 A.2d 44 (1996)).

*Lowery*, *supra*, 173 Md. App. at 682-83.

## I.

In a negligence action, a plaintiff bears the burden of proving: "1) that the defendant was under a duty to protect the plaintiff from injury, 2) that the defendant breached that duty, 3) that the plaintiff suffered actual injury or loss, and 4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Rowhouses, Inc. v. Smith*, 446 Md. 611, 631 (2016). Marrick's first allegation of error is based upon the first element of the appellees' negligence claim. Specifically, Marrick contends that it owed no duty to the appellees to ensure the proper construction of the safety guardrail because the responsibility for the construction of the guardrail had been delegated to Creative Trim. The appellees respond that the duty to comply with the building code was nondelegable by Marrick.

Maryland follows the general rule that the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his employees. *Rowley v. Mayor & City Council of Baltimore*, 305 Md. 456, 461 (1986) (citing *Restatement (Second) of Torts* § 409 (1965)). The Court of Appeals has explained, however, that the general rule of non-liability for an employer of an independent contractor "is riddled with a number of common-law exceptions that have practically subsumed the rule." *Id. See also Gardenvillage Realty Corp. v. Russo*, 34 Md. App. 25, 36 (1976) (explaining that "the established rule has appended to it some twenty exceptions as set out in the *Restatement (Second) of Torts* §§ 410-429"). The exceptions to the general rule fall into three broad categories: (1) negligence of the employer in selecting, instructing, or supervising the contractor; (2) nondelegable duties of the employer, arising out of some

6

relation toward the public or the particular plaintiff; and (3) work which is specially, peculiarly, or inherently dangerous. *Rowley*, *supra*, 305 Md. at 462.

The extent to which general contractors and owners are liable for the negligence of subcontractors due to a violation of the building code has been addressed in a series of cases over the past several decades. In *Gardenvillage*, *supra*, a tenant and her mother, an invitee, were injured when a concrete slab that formed the base of a porch gave way and the porch collapsed at their residence. 34 Md. App. 25. The collapse occurred six years after the slab had been constructed. *Id.* at 28. The tenant and invitee sued the owner, the general contractor,[3] and the subcontractor responsible for the construction of the slab. *Id.* at 26. The evidence demonstrated that the concrete slab had been built in a manner that violated the relevant building code and that the collapse of the porch was a direct result of the defective slab. *Id.* at 35.

We considered "whether social policy and fairness will allow an imposition of liability on the [owner and general contractor/permit holder] where their negligence was passive when opposed to the negligence of the subcontractor." *Id.* We noted that "[i]f the statute imposes a strict liability on the owner and permit holder, then there is no distinction between active and passive negligence" and "liability attaches if the violation of the [building c]ode was the cause of the injury." *Id.* We held, based upon the *Restatement (Second) of Torts*, § 424, that "the Building Code places a nondelegable, affirmative duty

_____

[3] The general contractor also held beneficial title to the property.

7

on the owner-permit holder at the time of construction, to insure compliance with the Code." *Id.* at 39.[4]

The holding of *Gardenvillage* was reaffirmed by the Court of Appeals in *Council of Co-Owners Atlantis Condo., Inc. v. Whiting-Turning Contracting Co.*, 308 Md. 18 (1986). In *Whiting-Turner*, the owners of 198 separate condominium units in a 21-story building brought an action against the general contractor/builder, developer/owner, and architects for negligent design, construction, and inspection of the building's utility shafts. *Id.* at 22.

---

[4] We also discussed whether general consumer protection policies and products liability law supported a holding assigning liability to the general contractor and owner, but "decline[d] to decide this case on those grounds as the question was not raised or argued by either side." *Id.* Nonetheless, we commented as follows:

> [I]t does appear that the Court of Appeals has adopted the policy of protecting the consumers when they are not in a position to protect themselves. The Court stated in *Phipps*, *supra*, that the reasons for adopting strict liability for the manufacturer and seller of defective products were (1) that the cost of injuries should in equity be borne by those who manufacture or sell such products rather than the injured person who was powerless to protect himself; (2) because it shifts the loss to those better able financially to bear the loss; (3) that the consumer relies on the seller in expecting the product to be safe for the uses for which it has been marketed and the expectation is better fulfilled by strict liability than negligence or warranty theories. Although not applicable to the instant case the fourth reason would be a reason to apply the rule in most cases; (4) the showing that the product is unreasonably dangerous is a sufficient showing of fault to impose liability without placing an almost impossible burden on the plaintiff of proving specific acts of negligence.

*Id.*

The owners contended that the utility shafts and related electrical work were not installed properly and constituted a fire hazard.  *Id.*  Neither the architect defendants nor the general contractor/builder defendants argued that their duties were delegated to independent subcontractors.[5]  The Court of Appeals commented on this issue as it pertained to the developer/owner, who had asserted that the duty to abide by the code had been delegated to an independent contractor.  The Court held that the duty of the developer/owner to abide by the building code was nondelegable.  *Id.* at 40.  The Court explained:

> The third potential source of a tort duty with respect to the dangerous condition of the building lies in the status of the developer as the creator of the building project. The developer is, in a sense, the builder of the project, even though he may delegate to others the physical acts of construction. Given the current trend of expanding the exceptions to the rule of nonliability of one who has employed an independent contractor, and given the policy considerations favoring the imposition of at least initial liability upon the person who sits at the top of the pyramid of those who create the improvement, a strong argument may be advanced in favor of the recognition of a nondelegable duty on the part of the developer with respect to unreasonably dangerous conditions created as a result of the development. We express no opinion on that issue because the pleadings suggest a narrower ground upon which a

---

[5] These defendants argued that the plaintiffs' recovery was barred due to lack of contractual privity.  *Whiting-Turner* is frequently cited for its discussion of the economic loss doctrine, which is applicable in certain cases involving purely economic loss.  Indeed, the Court of Appeals recently addressed the economic loss doctrine in *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 507 (2017), in which the Court held that, in the absence of contractual privity, physical injury, or risk of physical injury, design professionals in large government construction projects do not owe a tort duty to those who bid for and contract with a government entity.  In the instant case, the economic loss doctrine is inapplicable because Rutkowski suffered significant physical injury including broken bones and traumatic brain injury as a result of Marrick's negligence.  In light of Rutkowski's physical injuries, nothing in our opinion should be read to limit the effect of the application of the economic loss doctrine in appropriate cases.

nondelegable duty of the developer may be found — the requirement of a statute or ordinance.

Recognition of the nondelegable nature of a duty imposed by certain types of statutes is discussed at 5 F. Harper, F. James and O. Gray, *The Law of Torts*, supra, § 26.11 at 83-84:

> There are . . . situations wherein the law views a person's duty as so important and so peremptory that it will be treated as nondelegable. Defendants who are under such a duty " . . . cannot, by employing a contractor, get rid of their own duty to other people, whatever that duty may be." Duties imposed by statute are often found to be of this kind . . . [S]tatutory duties that have been held nondelegable include . . . various building code provisions . . . . (Footnotes omitted.)

The principle is recognized in § 424 of the *Restatement (Second) of Torts:*

> One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions.

In *Gardenvillage Realty v. Russo*, 34 Md. App. 25, 366 A.2d 101 (1976), the Court of Special Appeals applied the principle to affirm a judgment entered in favor of tenants and their invitee against the developer-owner (and against the general contractor) for injuries resulting from the collapse of a defective concrete porch slab. The slab had been constructed and installed by a subcontractor, and the defect resulted from the improper placement of reinforcing bars within the slab, so that the defect defied detection. The Court of Special Appeals held that the Baltimore City Building Code imposed a duty on the owner of the premises at the time the structure was built to erect it in accordance with the Code, and that the duty could

> not be delegated by employing independent contractors to accomplish the work.
>
> We agree that where, as alleged here, there is a violation of a provision of a building code that was intended as a safety measure, and where that violation has produced death or personal injury, the duty imposed by the Code is nondelegable.

*Whiting-Turner*, *supra*, 308 Md. at 39-40.

Marrick urges us to conclude that a duty imposed by a building code is only nondelegable by the owner or developer, not by a general contractor. In our view, this is an unreasonably narrow reading of *Gardenvillage*, *Whiting-Turner*, and the *Restatement*. To be sure, as the general contractor, Marrick was required to comply with the building code, and it is unassailable that the code provisions alleged to have been violated in this case were intended as safety measures. Pursuant to § 424 of the *Restatement (Second) of Torts*, "[o]ne who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions." In this case, Marrick, the general contractor responsible for the construction of the appellees' home, bore the statutory duty to provide specified safeguards or precautions. Marrick, therefore, is subject to liability to the appellees for harm caused by the failure of its employee Creative Trim to provide such safeguards.

Marrick points to a passage from *Whiting-Turner* in which the Court commented that "[a]s the owner and occupier of land, a developer owes a nondelegable duty to those who may come upon the land, and the nature and extent of that duty is fixed by that status

11

of the person claiming it." *Id.* at 37. First, we emphasize that this passage is *dicta*. Second, we observe that this passage was offered in the context of the Court's discussion of various potential *alternative* theories of liability and was discussed before the Court adopted the reasoning of § 424 of the *Restatement*. Accordingly, we reject Marrick's narrow reading of *Whiting-Turner* as imposing a nondelegable duty imposed by a building code only on an owner of the property.

Furthermore, as in *Whiting-Turner*, we need not address whether liability may be assigned to a general contractor for unreasonably dangerous conditions caused by a subcontractor absent a statutory violation. In this case, the general rule of nonliability does not control because the requirement of a statute or ordinance exception applies. We observe, however, as in *Whiting-Turner*, that policy considerations "favor[] the imposition of at least initial liability upon the person who sits at the top of the pyramid of those who create the improvement." *Id.* at 39. Policy considerations, therefore, support a finding of potential liability on the general contractor. Nevertheless, we need not rely on policy considerations because of the express exception outlined in the Restatement applies to the facts of this case. Accordingly, we hereby adopt § 424 of the *Restatement*, apply the § 424 exception to general contractors, and hold that Marrick, as general contractor, can be held liable for harm caused by its employee subcontractor when evidence was presented to demonstrate that the subcontractor violated the building code and the provisions of the building code alleged to have been violated were intended as safety measures.

We further reject Marrick's assertion that our opinion in *Brady v. Ralph M. Parsons Co.*, 82 Md. App. 519 (1990), *aff'd,* 327 Md. 275 (1992), requires us to rule in Marrick's

favor and hold that the § 424 exception and nondelegable duty theory applies only to an action against an owner. In our view, *Brady* is distinguishable from the present case. In *Brady*, an employee died as result of a construction accident after required safety measures were not followed at a building site. The decedent had been employed by a subcontractor that had been hired by the general contractor. The general contractor was hired by the owner. The owner had also hired a separate company, the Ralph Parsons Co. ("Parsons"), to provide inspection and safety services for the project. *Id.* at 521. The decedent's survivors and personal representative asserted that because Parsons had assumed responsibility for implementing required safety measures pursuant to its contract with the owner, Parsons was liable for the decedent's death. Parsons raised the affirmative defenses of contributory negligence and assumption of risk, and the jury found that the decedent was contributorily negligent and assumed the risk, barring recovery. *Id.* at 523-24.

On appeal, the decedent's survivor and personal representative argued that (1) Parsons' duty to assure compliance with the safety regulations was nondelegable, and (2) the defenses of assumption of risk and contributory negligence cannot bar a plaintiff's recovery when the defendant had breached a nondelegable duty. *Id.* at 524. We expressly held that the source of Parsons' duty was not statutorily imposed, but undertaken "pursuant to its contract with" the owner. *Id.* at 534. We emphasized that Parsons had "assumed a duty to exercise reasonable care in performing [its contractual] obligation." *Id.* We further held that "Parsons' negligence resulted from its failure to exercise due care in its duty to the decedent to monitor safety" and "[s]ince contributory negligence and assumption of risk are normally complete bars to an action for negligence and since we are cited to no

13

Maryland authority to the contrary," the defenses of contributory negligence and assumption of risk were available to Parsons and were properly submitted to the jury. *Id.* at 534-35.

We explained why the facts of *Gardenvillage* differed from the facts presented in *Brady*, observing that "[i]n *Gardenvillage* a statutory nondelegable duty was imposed on the owner for the benefit and protection of innocent members of the public." *Id.* at 536. We commented that, "[b]y contrast, Parsons was not the owner of the project, nor was the decedent an innocent member of the public." *Id.* According to Marrick, this language in *Brady* limits the holding of *Gardenvillage* as imposing a nondelegable duty only on an owner, rather than, as in this case, on a general contractor.[6]

We make two observations about our analysis on this issue in *Brady*. First, we emphasize that the facts of *Brady* and the source of the duty in *Brady* are factually dissimilar to the facts of the instant case. In this case -- as in *Gardenvillage* -- the source of Marrick's duty stemmed from the building code, and not, as in *Brady*, from a contractual relationship. Second, as discussed *supra*, we understand the analysis set forth in *Gardenvillage* to be applicable to a broader range of situations including the circumstances presented in this case. In our view, the reasoning set forth in § 424 of the *Restatement* is

---

[6] The parties dispute whether or not Marrick was the owner of the property when the house was constructed. Because this issue is not relevant to our analysis of the issues, and because this issue was not submitted for the jury's determination, we shall not address it herein.

equally applicable to assign liability to a general contractor for injury caused by a

subcontractor's violation of safety measures found in the building code.[7]

We next turn our attention to Marrick's assertion that any duty was extinguished as

a matter of law by the passage of approximately seven years between the construction of

the home and the accident that resulted in Rutkowski's injury. Marrick argues that the

appellees had owned the home for over seventy days prior to the incident. In Marrick's

---

[7] Other cases cited by Marrick are similarly distinguishable. In *Parker v. Neighborhood Theatres, Inc.*, 76 Md. App. 590, 596 (1988), we rejected the argument that a general contractor should be liable for injuries to a subcontractor's employee. We explained:

> The imposition of vicarious liability by the creation of the exceptions to the general rule is primarily a policy decision, the purpose being the protection of the public generally. While some jurisdictions hold that the contractor's employees are within the class to whom the owner owes a duty, the majority of jurisdictions hold that an owner's vicarious liability does not extend to employees of independent contractors.

*Id.* The rule pertaining to employees of subcontractors is inapplicable to the present case.

In *Wilbur v. Suter*, 126 Md. App. 518, 529 (1999), we observed that *Gardenvillage* and *Whiting-Turner* both "involve[d] injury to persons while upon the premises of the owner." That reasoning, however, was irrelevant to our determination in *Wilbur*, when we rejected the appellant's nondelegability argument on a separate basis. *See id.* ("[L]iability may not be imposed for the negligence of a person who is merely passive while the negligence of another is the moving and effective cause of the injury . . . Arguably, the appellant might have been able to obtain a judgment against both appellees, who would then be jointly and severally liable for the whole. Since the jury found no negligence on the part of Suter, who performed the renovations, there is no basis for Gibson's liability.") (internal citations omitted). Furthermore, as explained *supra*, the reasoning of *Gardenvillage* and *Whiting-Turner* is applicable to the present case despite the different factual circumstances.

15

view, this constituted ample time for the appellees to inspect the property and discover any defects. Marrick asserts that it would be unreasonable to hold that a builder has a continuing duty to every possible owner of a home, in perpetuity.

We reject Marrick's contention that its duty was extinguished as a matter of law due to the passage of time. First, Marrick misstates the law by suggesting that assigning liability in this case would be akin to holding that a builder has a continuing duty in perpetuity. Under Maryland law, a ten-year statute of repose applies to claims against contractors for defective and unsafe improvements to real property. Md. Code (2006, 2013 Repl. Vol.), § 5-108(b) of the Courts and Judicial Proceedings Article ("Except as provided by this section, a cause of action for damages does not accrue and a person may not seek contribution or indemnity from any architect, professional engineer, or contractor for damages incurred when wrongful death, personal injury, or injury to real or personal property, resulting from the defective and unsafe condition of an improvement to real property, occurs more than 10 years after the date the entire improvement first became available for its intended use."). To the extent that a factual question existed relating to whether the appellees should have discovered the defect earlier and taken appropriate steps to avoid injury, Marrick was permitted to argue that issue to the jury in the context of its defenses of contributory negligence and assumption of risk. The passage of time may

16

indeed make a claim against a contractor less likely to succeed, but it does not preclude such a claim as a matter of law.[8]

## II.

Having established that Marrick bore a duty to the appellees, we next consider whether sufficient evidence supports the breach and causation elements of the negligence claim.[9] "In a civil case, the evidence is legally sufficient to support a finding in support of the prevailing party if, on the facts adduced at trial viewed most favorably to that party, any reasonable fact finder could find the existence of the elements of the cause of action by a preponderance of the evidence." *Univ. of Maryland Med. Sys. Corp. v. Gholston*, 203 Md. App. 321, 329 (2012). We have explained:

> In a jury trial, the quantum of legally sufficient evidence needed to create a jury question is slight. If there is legally sufficient evidence to support a finding in favor of the party bearing the burden of proof, it would be error on the part of the trial judge to grant a motion for judgment in favor of the opposing party and withhold the case from the jury for decision.

---

[8] Marrick argues that its duty is relieved as a matter of law because a vendor's duty to third parties "remains with the vendor only until the vendee has notice of the condition and a reasonable opportunity to take precautions against it." *Whiting-Turner*, *supra*, 308 Md. 37. Liability was not assigned to Marrick in this case as a vendor of dwelling units, but rather, as the party responsible for the construction of the home in compliance with the building code.

[9] In this appeal, Marrick does not dispute that the appellees incurred damages as a result of the failed safety guardrail.

17

*Id.* (internal citation omitted). Marrick asserts that no facts addressed at trial support a finding of negligent supervision. Marrick further asserts there was insufficient evidence of proximate cause due to the lapse in time between construction and the accident. As we shall explain, the record reflects that there was evidence presented at trial to support the jury's verdict.

A. *Breach of the Duty of Care*

The verdict sheet listed the following four questions with respect to Marrick's claim of negligence,[10] all of which the jury answered affirmatively:

> 1. A. Do you find more likely than not that the construction of the railing violated the building code?
>
> 1. B. Do you find more likely than not that the violation of the building code was a proximate cause of Adam Rutkowski's injuries?
>
> 2. A. Do you find more likely than not that Marrick Properties was negligent in the construction and/or supervision of the construction of the railing?
>
> 2. B. Do you find more likely than not that Marrick Properties' negligence was a proximate cause of Adam Rutkowski's injuries?

The jury was not asked to identify whether it found Marrick negligent based upon a negligent supervision theory or upon a general negligence theory.[11] Indeed, the two

---

[10] The verdict sheet inquired separately as to the issues of contributory negligence, assumption of risk, and damages.

[11] Marrick does not raise any challenge with respect to the verdict sheet or the jury instructions. We comment briefly on this issue, however, because Marrick raises separate arguments as to the sufficiency of the evidence for negligence and negligent supervision.

theories of negligence are somewhat conflated in this case, given the role Marrick played in the construction of the safety guardrail.[12] Regardless of whether the claim is characterized as negligent supervision or general negligence, both theories support a single claim of negligence. Critically, the elements of negligent supervision are identical to the elements of a general negligence claim. *Fid. First Home Mortg. Co. v. Williams*, 208 Md. App. 180, 198 (2012) ("As in any action for negligence, a plaintiff asserting a cause of action for negligent supervision or retention must prove duty, breach, causation, and damages."). For these reasons, it was reasonable for the jury to be presented with a single question addressing whether Marrick "was negligent in the construction and/or supervision of the construction of the railing."

The appellees presented evidence that the safety guardrail was constructed inappropriately and that the improper construction of the safety guardrail caused Rutkowski's fall. Jeff Bayer, an expert in residential construction and homebuilding, testified that it is the role of a general contractor to hire and supervise subcontractors. He explained that the general contractors "definitely double check[s] what's done . . . by the subcontractor [with whom] they contract." Mr. Bayer testified that Marrick should have inspected the work of Creative Trim and that "there should have been supervision on the job to make sure the rails were put together properly."

---

[12] The issue before the jury was whether Marrick breached the standard of care through its supervision of Creative Trim. On the one hand, this issue can be cast as a negligent supervision claim, in that a general contractor can negligently supervise a subcontractor. The issue can also be cast as a claim alleging general negligence (rather than negligent supervision), because the role of a general contractor is to hire and adequately supervise its subcontractors.

19

Mr. Bayer's testimony about the standard of care for a builder/general contractor is consistent with Maryland law. *See Whiting-Turner*, *supra*, 308 Md. at 32 (explaining that architects and builders have a duty "to use due care in the design, inspection, and construction" of a building). Mr. Bayer explained that, in his view, if a guardrail is constructed with hidden fasteners, it is the responsibility of the general contractor to "find out how [the guardrail] is constructed." Mr. Bayer testified that if he became aware that a guardrail had been attached with finishing nails on one of his projects, the guardrail "would have come down and been redone."

Marrick presented evidence about Creative Trim's role, including evidence that Creative Trim was free to perform the work in the method of its choosing and that Creative Trim had been a subcontractor of Marrick for over ten years, rendering close supervision unnecessary.[13] Marrick also presented testimony from an engineering expert who testified that a guardrail constructed with finishing nails could withstand the requisite amount of force under the residential building code. The jury, however, was free to credit or discredit the evidence presented and to weigh the evidence as it saw fit. *Gholston*, *supra*, 203 Md. App. at 338. The inquiry on appeal is whether there was sufficient evidence to support the jury's verdict, not to evaluate the weight of conflicting evidence. *Id.* A reasonable fact-finder could have determined that Marrick breached its standard of care by failing to inspect

---

[13] Marrick did not, however, present expert testimony to counter Mr. Bayer's testimony as to the standard of care for a general contractor.

the guardrail and inquire as to the way the guardrail was affixed to the home. Accordingly, we hold that sufficient evidence exists to support the jury's negligence determination.[14]

Marrick separately asserts that insufficient evidence supports a finding of negligence through a negligent supervision theory, arguing that Marrick cannot be liable because it did not exercise control over the construction of the guardrail. First, we reject Marrick's assertion that it must actually exercise control over a subcontractor in order to be held liable for negligent supervision. The pertinent question is whether Marrick had "the right to control the details of his [contractors'] movements." *Appiah v. Hall*, 183 Md. App. 606, 622 (2008). Richard Haupt, owner of Creative Trim, testified that Marrick had the final say as to how anything was to be done at a Marrick property. Mr. Haupt further testified that he learned how to attach safety guardrails by looking at other homes constructed by Marrick, and that he taught his employees how to construct safety guardrails based upon the way Marrick liked them to be constructed. Mr. Haupt's testimony provides the evidentiary support for a finding that Marrick had the right to control the details of Creative Trim's activity. Furthermore, as discussed *supra*, the distinction between direct negligence and negligent supervision is blurred given the specific facts of this case and the role of a general contractor. In our view, sufficient evidence was presented upon which a reasonable fact-finder could have found that Marrick breached the standard of care for general contractors through its supervision of the construction of the safety guardrail.

---

[14] Because evidence was presented as to a specific breach of the standard of care by Marrick, we need not address whether the general contractor would be vicariously liable for a subcontractor's negligence in the absence of any negligent conduct on the part of the general contractor.

*B. Causation*

Marrick further asserts that there was insufficient evidence to demonstrate the causation element of the negligence claim. Marrick characterizes Rutkowski's accident as so remote in time from the date the guardrail was constructed that the jury would have to speculate as to whether the 2012 fall was caused by the condition created in 2005. We disagree with Marrick's characterization and hold that sufficient evidence as to causation was presented at trial.

There are two subparts that comprise the element of proximate cause. *Yonce v. SmithKline Beecham Clinical Labs., Inc.*, 111 Md. App. 124, 137 (1996). "'The element of proximate cause is satisfied if the negligence is 1) a cause in fact of the injury and 2) a legally cognizable cause.'" *Id.* (quoting *Baltimore Gas & Elec. Co. v. Lane*, 338 Md. 34, 51 (1995)). The Court of Appeals has explained:

> It should be clarified at this point that our inquiry is directed specifically to the issue of 'causation in fact' which has been regarded as an aspect of 'proximate cause.' W. Prosser, Handbook of the Law of Torts, § 41, at 240 (3d ed. 1964), 2 F. Harper and F. James, The Law of Torts, § 20.2, at 1110 (1956). Proximate cause ultimately involves a conclusion that someone will be held legally responsible for the consequences of an act or omission. This determination is subject to considerations of fairness or social policy as well as mere causation. Thus, although an injury might not have occurred 'but for' an antecedent act of the defendant, liability may not be imposed if for example the negligence of one person is merely passive and potential, while the negligence of another is the moving and effective cause of the injury. *Bloom v. Good Humor Ice Cream Co.*, 179 Md. 384, 18 A.2d 592 (1941), or if the injury is so remote in time and space from defendant's original negligence that another's negligence intervenes. *Dersookian v. Helmick*, 256 Md. 627, 261 A.2d 472 (1970); *Liberto v. Holfeldt*, 221 Md. 62, 155 A.2d 698 (1959).

22

*Peterson v. Underwood*, 258 Md. 9, 16 (1970).

Marrick asserts that the length of time between the construction of the home and the failure of the guardrail serves to sever the causal link between any negligent act on the part of Marrick and Rutkowski's injury. Marrick analogizes the facts of this case to *Peterson*, *supra*, 258 Md. 9. As we shall explain, *Peterson* is readily distinguishable from the instant appeal.

In *Peterson*, a child died after an exterior wall collapsed.[15] *Id.* at 11. The decedent's mother brought suit against the current owner and previous owner of the property at which the accident occurred. *Id.* at 12. At trial, evidence was presented that the wall had not been constructed in conformance with the relevant building code in that it "had no steel reinforcing rods, no but[t]resses or pilasters, and no subsurface footing." *Id.* at 14. No evidence was presented, however, as to the cause of the wall's collapse. *Id.* at 15.

The Court of Appeals held that the decedent's mother had presented sufficient evidence that the wall was negligently constructed and that the child's death was the result of the collapse of the wall, but the Court "f[ou]nd to be a fatal defect" the "lack of any evidence casually linking defendants' negligence to the injury suffered." *Id.* The plaintiff's expert witness presented evidence as to the wall's negligent construction, but "did not give his opinion on what caused the wall to fall." *Id.* at 18. The Court recognized that "slight proof is all that is necessary" for the element of causation to be submitted to the jury, but emphasized that "[t]o allow a jury of laymen to attempt to answer the question

---

[15] The wall was built of masonry blocks and separated the rear yard from an alley.

of what caused the wall to fall four and a half years after its construction *without any evidence as a guide* would permit the rankest kind of guesswork, speculation and conjecture." *Id.* at 21 (internal quotation and citation omitted) (emphasis supplied).

In this case, unlike in *Peterson*, the appellees presented evidence that the negligent construction of the safety guardrail was a cause of the guardrail's failure and Rutkowski's injury. The appellee's home construction expert, Jeff Bayer, testified that the use of finishing nails rather than screws to affix the guardrail to the building was "why [the guardrail] failed." Mr. Bayer explained that the use of the finishing nails as fasteners was "the big problem with the railing." In addition, the appellee's engineering expert, Greg Harrison, testified that the safety guardrail would not have been able to withstand 200 pounds of force, as required by the building code, on the day it was built. Dr. Harrison estimated that the amount of weight Rutkowski would have pressed against the guardrail when he leaned against it to shake out the kitchen floor mat was between thirty-five and forty-five pounds. Furthermore, Dr. Harrison identified the place where finishing nails were used as the point of failure for the guardrail. Indeed, Marrick's engineering expert, Brian Bramel, agreed that the place where finishing nails were used was the point at which the guardrail failed.[16]

This is not a case like *Peterson*, in which a jury was tasked with determining the cause of an incident "without any evidence" presented as to causation. *Id.* at 21. In this

---

[16] Bramel disagreed with Dr. Harrison's opinion on other issues. Bramel testified that, based upon his structural analysis, he had concluded that the guardrail was structurally compliant with the housing code and constructed in a manner that would allow it to withstand the requisite amount of weight.

24

case, the jury heard testimony from multiple witnesses as to the ways in which the safety guardrail was improperly constructed *and* that the improper construction is what caused the guardrail to fail.

As in *Peterson*, several years passed between construction and injury. *Peterson*, however, does not stand for the principle that the passage of time alone is enough to extinguish proximate cause. *Id.* at 20 ("Nothing we say in this opinion is meant to imply that time or space alone will insulate a negligent wrongdoer from liability."). *See also Gardenvillage*, *supra*, 34 Md. App. at 35 (holding that there was "sufficient evidence . . . to show that the collapse of the porch was a direct result of the defect in the concrete slab" when the injury occurred six years after the defective construction). The appellees presented ample evidence on the issue of causation before the trial court. We hold, therefore, that the issue was properly submitted to the jury.

## III.

Last, we address Marrick's contention that it was entitled to judgment as a matter of law because Rutkowski assumed the risk and/or was contributorily negligent when he leaned his body against the safety guardrail without first examining the guardrail or testing the integrity of the guardrail. In our view, the affirmative defenses of contributory negligence and assumption of risk were properly submitted to the jury.

Contributory negligence and assumption of risk are two related, but distinct, defenses to a primary negligence claim. *Schroyer v. McNeal*, 323 Md. 275, 280 (1991) ("Assumption of the risk and contributory negligence are closely related and often overlapping defenses."). The Court of Appeals has explained that "'[t]he distinction

25

between contributory negligence and voluntary assumption of the risk is often difficult to draw in concrete cases, and under the law of this state usually without importance, but it may be well to keep it in mind.'" *Id.* (quoting *Warner v. Markoe*, 171 Md. 351, 359 (1937)). The Court continued:

> "Contributory negligence, of course, means negligence which contributes to cause a particular accident which occurs, while assumption of risk of accident means voluntary incurring that of an accident which may not occur, and which the person assuming the risk may be careful to avoid after starting. Contributory negligence defeats recovery because it is a proximate cause of the accident which happens, but assumption of the risk defeats recovery because it is a previous abandonment of the right to complain if an accident occurs."

*Schroyer*, *supra*, 323 Md. at 281 (quoting *Warner*, *supra*, 171 Md. at 359-60). The Court explained that regardless of "[w]hether [the two defenses] overlap or not, the critical distinction between contributory negligence and assumption of the risk is that, in the latter, by virtue of the plaintiff's voluntary actions, any duty the defendant owed the plaintiff to act reasonably for the plaintiff's safety is superseded by the plaintiff's willingness to take a chance." *Id.* at 282. Assumption of risk does not require proof of negligence by the plaintiff, but only that the plaintiff "be aware of the risk, which he or she then voluntarily undertakes." *Id.* at 283.

Marrick asserts that Rutkowski assumed the risk of his injuries because he acknowledged in his testimony that he appreciated at the time of the incident that he could be injured if the guardrail failed. Marrick presented no evidence, however, to show that Rutkowski had any reason to believe that the guardrail was likely to fail. Marrick's logic would suggest that an individual who knew that he could be injured if a stairway were to

26

collapse beneath him would assume the risk of injury by walking on the stairway regardless of whether there was any reason to believe the stairway was dangerous. Marrick's position that this amount of knowledge on Rutkowski's part entitles Marrick to judgment as a matter of law would require us to adopt an illogical extension of the assumption of risk doctrine. Assumption of risk "'rests upon an intentional and voluntary exposure to a known danger, and therefore, consent on the part of the plaintiff to relieve the defendant of an obligation of conduct toward him and to take his chances from harm from a particular risk.'" *Crews v. Hollenbach*, 358 Md. 627, 640-41 (quoting *Rogers v. Frush*, 257 Md. 233, 243 (1970)). For the assumption of risk doctrine to bar recovery, a plaintiff must voluntarily expose him or herself to a *known danger*, not a foreseeable consequence of an unknown danger.

Rutkowski testified at trial that he had no reason to believe that the safety guardrail would fail because he assumed that it was constructed properly. Furthermore, evidence was adduced that the guardrail appeared sturdy and that trim concealed the use of finishing nails. Whether a plaintiff had knowledge and appreciation of a particular risk is a determination for the jury "unless the undisputed evidence and all permissible inferences therefrom clearly establish that the risk of danger was fully known to and understood by the plaintiff." *Thomas v. Panco Management of Maryland, LLC*, 423 Md. 387 (2011) (internal citation omitted). In this case, whether Rutkowski assumed the risk of his injuries was properly submitted to the jury, and the circuit court properly denied Marrick's motion for judgment on this issue.

Similarly, we hold that whether Rutkowski was contributorily negligent was a jury question. "Ordinarily, the question of whether the plaintiff has been contributorily

27

negligent is for the jury, not the judge, to decide." *Campbell v. Baltimore Gas & Elec. Co.,* 95 Md. App. 86, 93 (1993).  The Court of Appeals has explained that the contributory negligence determination should only be taken from the jury in very narrow circumstances:

> To justify the withdrawal of a case from the jury on the ground of contributory negligence, the evidence must show some act so decisively negligent as to leave no room for difference of opinion thereon by reasonable minds . . . Where there is a conflict of evidence as to material facts relied upon to establish contributory negligence, or the act is of such a nature that reasonable minds, after considering all the circumstances surrounding the accident, may draw different conclusions as to whether it constituted contributory negligence, it is not for the court to determine its quality as a matter of law, but it is for the jury to pass upon it.

*Heffner v. Admiral Taxi Serv.*, 196 Md. 465, 473-74 (1950) (internal citations omitted).

In the circuit court, Marrick argued to the jury that a reasonable person would have inspected the condition of a guardrail before leaning his or her weight against it.  The appellees countered that it was reasonable for Rutkowski to assume that the guardrail was properly constructed and would support his weight.  This determination is a classic jury issue.  Accordingly, we hold that the circuit court properly denied Marrick's motion for judgment as a matter of law with respect to contributory negligence.  We, therefore, affirm the judgment of the Circuit Court for Calvert County.

> **JUDGMENT OF THE CIRCUIT COURT FOR CALVERT COUNTY AFFIRMED.  COSTS TO BE PAID BY APPELLANTS.**